## HEFLINGER *v.* HEFLINGER.

ATKINSON, J. 1. If a ceremonial marriage is void on account of the husband's disability to contract marriage, and after the disability is removed the man and woman again agree and each accepts the other as a lawful spouse, and they cohabit with each other, holding themselves out to the world as husband and wife, they will be held to be lawfully married. *Hamilton* v. *Bell*, 161 *Ga.* 739 (3) (132 S. E. 83), and cit.

2. A petition for permanent alimony, based on the ground that the parties are living in a bona fide state of separation without any suit for divorce pending between them, and for temporary alimony and allowance for attorney's fees, which alleges in general terms the marital relation and the ability of the husband to support and maintain the wife, may be amended by alleging that the marriage relation existed at the time the petition for alimony was filed, by reason of a common-law marriage between the parties, and by specifically describing the social and financial standing of the parties, showing the necessities of the wife and the ability of the husband to pay permanent alimony.

3. Where an amendment of the character just referred to alleges that the agreement upon which the common-law marriage was based occurred after the husband had repudiated a former ceremonial marriage between the parties and while a suit instituted by the husband was pending in the courts of Virginia to dissolve such ceremonial marriage, and the common-law marriage was entered into after the husband's alleged disability had been removed, such amendment did not allege a different cause of action from that which was obtained in the original petition. Nor did the allegations relating to social and financial standing of the parties, and the claim for allowance of alimony in a lump sum, allege a different cause of action.

4. There is no provision of law requiring service upon a defendant of an appropriate amendment to an original petition. *Miller* v. *Georgia Railroad Bank*, 120 *Ga.* 17 (2) (47 S. E. 525). It was not essential to validity of the judgment rendered in this case that the defendant be served with the amendment to the petition.

5. On the day the petition for permanent alimony and temporary alimony and attorney's fees was filed, and after service thereof had been acknowledged by the defendant, the defendant paid to the plaintiff $700, and both parties signed a written contract which provided as follows: "This agreement, made and entered into this 16th day of November, 1922, by and between Mrs. Clelia Heflinger and Charles Heflinger, witnesseth that said Mrs. Clelia Heflinger has this day received from said Charles Heflinger the sum of seven hundred dollars ($700.00), five hundred dollars ($500.00) of which amount is in full settlement of any and all claims which the said Mrs. Clelia Heflinger has 'or may have against the said Charles Heflinger for and on account of temporary alimony (for which suit has this day been brought

Husband and Wife 30 C. J. p. 1078, n. 37 New; p. 1087, n. 30 New; p. 1089, n. 98; p. 1096, n. 88 New.

Marriage 38 C. J. p. 1319, n. 39.

Pleading 31 Cyc. p. 594, n. 60.

by her against him in the superior court of Fulton County, Georgia), for and during the period from the present time to the date of the rendition of final judgment or decree by the Court of Appeals of the State of Virginia, upon an appeal now pending in said court by said Mrs. Clelia Heflinger from a judgment or decree in a suit brought by Charles Heflinger against the said Mrs. Clelia Heflinger for the annulment of an alleged marriage existing between said parties; and the remainder, two hundred dollars ($200.00) of said amount being in full settlement of attorney's fees sued for by said Mrs. Clelia Heflinger in said suit this day brought in Fulton superior court. This agreement is entirely without prejudice with respect to the rights of either party hereto in any respect whatsoever. In witness whereof the parties hereto have hereunto set their hands and affixed their seals the day and year first above written." *Held:*

(*a*) This contract purported to refer exclusively to temporary alimony up to a specified time, and to attorney's fees in the suit for alimony, and had no reference to permanent alimony.

(*b*) Receipt of the money under this contract was no representation upon the part of the plaintiff that the suit for permanent alimony would be abandoned.

(*c*) The defendant has not alleged any conduct or representation upon the part of .the petitioner, from which it could be inferred that the plaintiff would not continue to sue for permanent alimony.

6. In a suit for permanent alimony it is within the power of the court to award an absolute estate in money in a lump sum. *Wise* v. *Wise*, 156 *Ga.* 459 (2) (119 S. E. 410).

7. The defendant did not file any demurrer or answer to the original or amended petition for alimony, or appear at the trial. A verdict was returned: "We, the jury, find for the plaintiff, and award to her permanent alimony in gross the sum of thirty-seven thousand and five hundred dollars. We find that the plaintiff do recover of the defendant said sum of thirty-seven thousand and five hundred dollars, which we award to the plaintiff as her own absolutely in fee simple. This Jan. 31, 1924." A judgment was duly entered upon the verdict, and on May 1, 1924, the defendant filed his formal motion to vacate and set aside the verdict and judgment. *Held*, that under application of the foregoing principles, the court had jurisdiction of the alimony suit as amended. The verdict and judgment were appropriate under the law in a proper case. The defendant was concluded as to the matters alleged in his subsequent motion to set aside the verdict and judgment. It follows that the judge did not err in disallowing the proposed amendment, and in dismissing the motion to set aside the verdict and judgment.

*Judgment affirmed. All the Justices concur.*

No. 4935. FEBRUARY 19, 1926.

Alimony, etc. Before Judge E. D. Thomas. Fulton superior court. May 13, 1925.

On November 16, 1922, a petition for permanent alimony and temporary alimony and an allowance for attorney's fees was sanc-

tioned by the judge of the superior court of Fulton county, and an order nisi was granted. On the same day the petition was filed in the office of the clerk of the court, and process was issued returnable to the next January term; and the defendant personally signed an entry upon the record which stated: "Due and legal service of the within and foregoing petition, process, and order to show cause, acknowledged; copy and all other and further service and notice waived." Afterward he left the county, and did not file any answer or make other defense. There was no interlocutory action taken by the court, and at the appearance term the case was marked in default. The substantial allegations of the petition were, that the defendant is a non-resident of the State, being temporarily in Fulton County; that defendant and plaintiff "are husband and wife . . now residing in a bona fide state of separation;" that no suit for divorce is pending between them in this State, that defendant is possessed of considerable property and has a substantial income; that plaintiff is in need of support and maintenance, and is entitled to have both permanent and temporary alimony and attorney's fees, for which there were appropriate prayers. The case came on for hearing at the January term, 1924. On January 30, 1924, an amendment to the petition was allowed by the court and duly filed. It was never served upon the defendant. It alleged that the marriage relation existed by reason of a common-law marriage created by express agreement of the parties, entered into in Fulton County, Georgia, on May 13, 1922, to be husband and wife, and acted upon by cohabitation as husband and wife and holding themselves out to the public as husband and wife from and after the date of the agreement, both parties being at the time competent to contract marriage. The amendment contained the following narrative. On July 10, 1920, the parties entered into a ceremonial marriage in the State of Maryland, the ceremony having been performed by a minister of the gospel under and by virtue of a marriage license issued by the constituted authorities of Maryland, which marriage was in all respects in due form of law both civil and ecclesiastical. The defendant had been married before, but at the time of the ceremonial marriage informed petitioner that his first marriage had been legally dissolved by a decree of divorce, and that he was free to contract marriage; and the plaintiff, believing

the defendant's statements, entered into the ceremonial marriage innocently and in good faith. The ceremony was followed by "a honeymoon" of several months duration, the defendant taking petitioner on an extended wedding tour, stopping in various cities at the most fashionable hotels, and finally visiting the defendant's former home and his relatives in Ohio. Subsequently the pair went motoring from Ohio to Richmond, Virginia, where the defendant went to attend a national convention of carriage men in October, 1920, an organization of which he was a member. The defendant was there taken ill, and was operated on at a hospital. He became infatuated with one of the nurses at the hospital; and when the nurse was removed from attendance upon him at petitioner's request, the defendant became angry with petitioner, and when she visited him in his room at the hospital he violently assaulted her and drove her from the room. The plaintiff became sick and prostrated from the shock of the assault, and while she was in bed under the care of a physician the defendant had his attorney to advise the hotel at which she was stopping that he would no longer be responsible for her board, and to advise petitioner that he would institute proceedings for divorce. After the defendant summarily abandoned petitioner and cast her off as his wife, leaving her ill, without friends, alone in a public hotel in a strange city, where she had hardly an acquaintance and no one to whom she could turn in her distress, he caused to be filed in the courts of Virginia and served upon her a suit for an annullment of their marriage, on the ground that the marriage was null and void under the laws of Virginia. The suit for annullment was predicated upon a statute of Virginia that had been enacted in 1919, which provided that in cases of dissolution of bonds of matrimony neither party should remarry within six months from the date of the decree. Petitioner did not know of the statute, but she has since learned that the defendant did know of it and had been advised prior to the above-mentioned ceremonial marriage that any marriage he might seek to contract within six months of his decree of divorce from his former wife would be void. After the suit for annullment was served upon her and while lying ill in her bed at the hotel in Virginia, petitioner, on December 20, 1920, wrote a letter to the defendant making an appeal to him to remarry her, stating that the six

months would expire on December 23, after which his disability would be removed. The letter was unnoticed by the defendant. Petitioner then, realizing that her honor as a woman and a wife and her position in society was at stake, took steps to resist the suit for annullment; and at the total sacrifice and entire loss of her small separate estate then of the value of $10,500, she employed counsel and for two years carried on the burden of an expensive litigation in defense of her honor and name. The trial court decided against her. She carried the case to the court of last resort in Virginia, and on June 14, 1923, that court rendered its decision adverse to her. However, before the decision of the Supreme Court of Virginia, at Easter, 1922, she was surprised to receive an "Easter card" through the mail from the defendant, and following that she received a letter from him, requesting her to meet him in Charlotte, North Carolina. Petitioner's position was so embarrassing, her status among her friends and associates so humiliating and mortifying, that she decided to meet him for a reconciliation, and in passing through Charlotte on her way to Atlanta she had an interview with defendant at Charlotte. The defendant then expressed to petitioner penitence and regret for the wrong he had done her, prayed for her forgiveness, and begged for permission to come to see her in Atlanta as soon as he could complete the itinerary of a business trip he was then engaged in making. On May 13, 1922, ten days after the above interview, the defendant came to petitioner at the Piedmont Hotel in Atlanta, Georgia, "and proposed to your petitioner that they be man and wife, and that the past be forgotten. Your petitioner consented to be the wife of the [defendant], and he agreed that from thenceforth he would be her husband; and thereupon the defendant . . checked out and brought his baggage from the Ansley Hotel, where he was stopping, to petitioner's room in the Piedmont Hotel, and the defendant . . occupied with your petitioner room 532 at the Piedmont Hotel in Atlanta, Georgia, May 13, 14, 15, and 16, 1922, on which last day he checked out to go on another business trip. While at the hotel, on May 13, 14, 15, and 16, 1922, and thereafter the [defendant] held out your petitioner as his wife to the hotel staff and to all friends and acquaintances with whom they came in contact, and accorded to her every respect and recognition due

to a wife." This resumption of the marital relation occurred after the defendant's disability to contract marriage had been removed. At the date of so resuming petitioner requested that there be another ceremonial marriage, but defendant insisted that no further ceremony was necessary; and in order to avoid scandal and comment that would follow such marriage, petitioner accepted such conditions as they were. Having resumed the marital relations the defendant and petitioner continued from that time to live together as husband and wife until November 14, 1922, when without just cause or provocation he suddenly announced to her his intention to cast her off and to abandon her as his wife forever; and thereupon did abandon her, departed from the State, concealed his whereabouts from her, and has never since communicated with her. She is destitute financially, and has no property or resources of her own. Her health is broken and permanently impaired. Her physical condition is such that she is unable to earn money or a livelihood, and it is necessary for her to have medical treatment. She and her family have always occupied a prominent and respectable position in society and among their friends and associates. She has been accustomed to the necessities and luxuries of life; and in order that she may have a commensurate maintenance and support in keeping with her position in society and with the financial means, income, and earning power of the defendant, an allowance of $5000 per annum as permanent alimony would be reasonable and requisite. He has no property or money located in Georgia but is reasonably worth $150,000 or more. She is not able to schedule all of the separate items which constitute his estate, because the bulk of his properties consists of securities in the form of stocks and bonds and cash. She alleges facts and circumstances which she insists support her estimate of the financial standing and worth of the defendant as follows: He is 55 years of age and of vigorous and robust health and strength; he is thrifty, shrewd, and experienced in business, with a capacity for handling big business and with an extraordinary earning power; he was formerly a manufacturer of buggies, and later of automobiles; since 1917 and continuously until 1923 he has been the traveling representative with a company of Cleveland, Ohio, earning a salary of $600 per month, with all expenses paid, thereby receiving a net

salary of $7200 per annum. During the period above mentioned he has also sold products of a company located in Boston, Massachusetts, receiving commissions for sales, and from that concern alone he received a net profit of $20,000 in the year 1919. He was also a representative of a company located at Newark, New Jersey, from which he earned several thousand dollars annually. In the years 1921 and 1922 he earned other commissions the amount of which could not be stated. The territory of his operations included practically all the important cities of the Atlantic seaboard from Boston to New Orleans, and his sales were largely in car-load lots. The average of his earnings from the sources above indicated from 1917 to 1922, inclusive, was not less than $20,000 per annum, or an aggregate of $120,000. During those years he has had but one illness, and he has not to petitioner's knowledge had any financial losses. At the same time he has had an income from rents and dividends from stocks and bonds, and from profits in buying and selling securities. He advised petitioner of one transaction in which he realized the sum of $5000 profit, he made in a deal in stock in 1920, and he has constantly reported to her small gains from time to time since her marriage to him in 1920. It is his custom to ·carry and have on hand large amounts in cash. In 1920 he had large deposits in banks ·in several designated cities. In 1920 he owned designated realty in Virginia of the value of $10,000, in Missouri of the value of $27,000; and if these have been sold, he has the equivalent in cash. In 1920 he owned certain corporate stock in the hands of named stock brokers of New York City, of the value of $25,000, and other designated personal property of stated but lesser values. He is now located in a western city, and is in business and an active dealer in stocks and bonds and real estate. If petitioner should be awarded permanent alimony in periodic payments, it would be necessary to go to a foreign jurisdiction to enforce collection; defendant is of a stubborn and litigious disposition, and will in all likelihood refuse payment and contest every attempt she may make to collect her allotments; and the collection in periodic installments will likely lead to a multiplicity of suits; wherefore it is prayed that on the trial the court award to her "permanent alimony in gross, and grant to your petitioner a judgment in a lump sum in full of her claim and demand against the defendant for permanent alimony."

After the amendment was allowed the case was submitted to a jury, and a verdict was returned a copy of which is set forth in the seventh division of the syllabus. A judgment was duly entered upon the verdict. On May 1, 1924, the defendant filed a motion to vacate and set aside the verdict and judgment. The motion was in the form of a petition to the court, which alleged that the whole proceedings upon the part of the plaintiff were a fraud upon the court, for reasons that will be stated; that the first knowledge that movant had of the judgment was on March 3, 1924, when he was served in a suit in the courts of California based on the judgment; that movant had a good defense to the suit for alimony, and was entirely ignorant of the amendment, and plaintiff well knew at the time when the amendment was filed that if the movant had the opportunity to answer her charges and the case was tried on its merits, she would have no standing before the court; that movant understood the question of alimony as contained in the original petition was settled between the parties; that the demands for alimony in the original petition were based on the status of the parties prior to the annullment of the marriage by the courts of Virginia. Referring to the allegations of the petition and amendment, it was alleged that movant and plaintiff were never legally married; that she never suggested that a common-law marriage existed between them until the amendment was filed; that they entered the ceremonial marriage in July, 1920, which marriage was annulled in June, 1922, by the decree of the court, and the judgment of the trial court was affirmed by the Supreme Court of Virginia in June, 1923; that prior to the ceremonial marriage he had been intimate with her on different occasions, and since the institution of the proceedings in Virginia to annul the marriage he has seen her on other stated occasions; that the meeting in Atlanta in May, 1922, was not prearranged; he did not send her an Easter card, and did not see her in Charlotte, North Carolina; he saw her in Atlanta on May 13, 1922, when she forced herself into his room for money, and he gave her $20; he was intimate with her at different times from May 13 to 16, on which latter date he left Atlanta and did not see her again until November, 1922; on the 15th of November movant sought her for purpose of pro-

curing her signature to a quitclaim deed conveying a piece of property in Missouri, which had been sold by him. On the date last mentioned she forced herself on movant in his room at the Piedmont Hotel, and they were intimate on different occasions between that time and the day on which he was served with the original petition for alimony. Through prearrangement with her brother she had herself "discovered" in movant's room, which fact of itself negatived any suggestion that they were in good faith holding themselves out as husband and wife; and in fact they did nothing in this respect, except that she of her own accord registered at the hotel under movant's name. At no time after the annullment proceedings were instituted in Virginia did he introduce her as his wife. On or about November 15, 1922, movant's life was threatened by the respondent's brother, and he was threatened with arrest unless movant would adjust respondent's claim for alimony and pay her counsel fees; and through fear movant acknowledged service of the petition for alimony and made a settlement, "copy of which is hereunto attached" [as set out in the fifth division of the opinion]. He "understood said settlement to be in fact final and complete in respect to all demands" of the plaintiff, "and therefore made no answer to her petition. If he failed to grasp her purposes, it was because of the excitement growing out of the aforesaid duress; and for the further reason that he was advised by his counsel then representing him that if the decree of annullment was affirmed by the Supreme Court of Appeals of the State of Virginia, that the plaintiff's action before this honorable court would be at an end." In addition to the amounts referred to in the settlement, movant paid to plaintiff $2150 by way of alimony and attorney's fees, pending the annullment proceeding in Virginia. She well knew, at the time of the ceremonial marriage, that movant could not contract with her, "for that less than six months had passed following a decree of divorce granted to him in the State of Virginia," and that the ceremonial marriage "was entered into in a sense of sympathy" for her. However, the ceremonial marriage was entered into in good faith on the part of movant, who did not then fully know the respondent's true character. He treated her with every consideration until after his confinement in the hospital. The allegations in her amendment, relative to

the movant's illness and his infatuation for a nurse, are false; during said illness plaintiff constantly annoyed movant by making demands upon him for money, and she became so obnoxious that she was ordered by the doctor away from the hospital, and she thereupon appropriated movant's automobile without his knowledge or consent, and left the State of Virginia. Movant also learned of a former suit that had been instituted by respondent in the United States District Court of Missouri, against a man and a woman, which was dismissed at the plaintiff's cost; the litigation reflects no credit upon her character, as will more fully appear by reference to copies of said proceedings which are attached. Movant thereupon set about to have annulled said ceremonial marriage, and a decree was entered to that effect, which was afterwards affirmed by the Supreme Court of Virginia. The plaintiff did write to movant a letter as appears in her amendment, and he did turn a deaf ear thereto, for that he had learned something of her true character, and said annullment was accordingly procured. Thereafter the acts of intimacy hereinbefore specifically referred to were indulged in purely on a monetary basis. Plaintiff perpetrated a further fraud upon the court, relative to her respectability, as set forth in her amendment. Besides her conduct as hereinbefore set forth, while she was in Richmond, and pending said annullment proceeding, she was charged with stealing three valuable diamond rings, and was arrested, and procured her release by returning the rings. Her true character is further shown by proceedings in this court styled "F. A. Mc-Corkle *v.* C. L. Ramsey," a copy of which is attached as an exhibit, and still another proceeding a copy of which is attached as an exhibit. Movant is further advised that the plaintiff, who at one time was a public stenographer in a local hotel, "was let out of her connection with said hotel by reason of her insisting on receiving dictation in the room of the male guests of the hotel." She perpetrated a further fraud in her allegations in said amendment as to movant's financial worth; he "has never been worth anywhere near the sum of one hundred and fifty thousand dollars, as charged; the property which is referred to as in Virginia was sold in 1920 for $6000; three of the other pieces of property were sold respectively for $6500.00, $4000.00, and $1000.00, and movant states that at this time he is not worth

exceeding ———— dollars." He further alleges that the amendment "materially changed the cause of action," and therefore opened the petition as amended to defense; and he was entitled to service and knowledge and information concerning said amendment, to the end that he could defend against the same. He further shows, "that alimony is for the support of the wife during her life, and any award of a gross sum should be for life, and not in fee simple;" and that the respondent gave no testimony to this court touching her age or expectancy, which expectancy, according to the allegations of the amendment, is not normal. The petition concluded with prayers for an order nisi, and that the verdict and judgment awarding alimony be set aside and declared to be null and void. At the hearing an amendment to the foregoing motion was offered, which set out copies of the records and evidence in the court proceedings referred to in the original motion, and other proceedings, all of which, as indicated above, transpired prior to the ceremonial marriage. The judge refused to allow the defendant's amendment, and dismissed the motion to set aside the verdict and judgment, on the ground that no sufficient cause was alleged for granting the relief prayed. The movant excepted to both rulings, on the ground that the judgment was contrary to law.

*Alston, Alston, Foster & Moise,* for plaintiff in error.

*James W. Austin* and *Etheridge & Etheridge,* contra.