## AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *et al. v.* BROCK.

1. Properly construed, the language employed in section 34 of the workmen's compensation act of 1920 (Acts 1920, p. 167) evidences an intention on the part of the General Assembly to subject employers only to liability for accidents, misfortunes, or injuries resulting to their employees during the time of service or employment, and the provisions of this section were evidently embodied in the act with this end in view.

(*a*) If the language of section 34, supra, be so construed as to render an employer liable for an injury accruing to an employee in his employment who has already been previously injured in a prior employment, just as if such employee had never been previously injured, the incorporation of this section in the act would be ineffectual and nugatory.

(*b*) Under the provisions of the workmen's compensation act, the findings of fact by the industrial commission are final and conclusive. It was necessary for the industrial commission to ascertain, apart from other facts to be considered, "the degree of incapacity from the later accident as if the early disability or injury had not existed," in order to avoid any possibility of liability on the part of the employer for incapacity which might have been occasioned by the prior injury which the employee had sustained. The commission found as a fact that the degree of incapacity caused by the amputation of the claimant's leg three inches below the knee when he was only eight years old amounted to between 85 and 86 per cent. It further found that the degree of incapacity resulting from the injury to the knee of the claimant's leg which had previously been injured was 50 per cent. These findings of fact being incontrovertible, the award of the commission was not erroneous.

No. 5692. FEBRUARY 16, 1928. REHEARING DENIED MARCH 3, 1928.

Certiorari; from Court of Appeals. 35 *Ga. App.* 772.

---

Workmen's Compensation Acts..C. J. p. 94, n. 88 New; p. 115, n. 37; p. 122, n. 39.

*McDaniel & Neely* and *Harry L. Greene,* for plaintiffs in error.
*J. G. Collins,* contra.

RUSSELL, C. J.  Reduced to their last analysis, the questions presented by the record in this certiorari are only two in number. The first involves the proper construction of the language employed in section 34 of the Georgia workmen's compensation act (Ga. L. 1920, p. 167) on page 186.  The second question is raised by the contention presented in the petition for certiorari, that the courts upon appeal can consider and review only the adequacy or inadequacy of the amount awarded in case of a compensable injury when and after the Industrial Commission has determined as a matter of fact the degree of incapacity which has resulted from the injury for which the employer is liable.

Section 34 of the workmen's compensation act provides:  "That· if an employee who suffers an injury in his employment has a permanent disability or has sustained a permanent injury, such as is specified in section 32, suffered elsewhere, he shall be entitled to compensation only for the degree of incapacity which would have resulted from the later accident if the early disability or injury had not existed."  Section 32 contains a schedule of payments to be made in lieu of all other compensation for injuries to various members of the human body.  It is not necessary to recapitulate the specified injuries contained in the section, for it suffices to say that in subsection (o) it is provided:  "For the loss of a leg, fifty per centum of the average weekly wages during one hundred and seventy-five weeks," and to note that the section concludes (embracing in this provision all the subsections) :  "The weekly compensation payments referred to in this section shall be subject to the same limitations as to maximum and minimum as set out in section thirty."  Section 30 (Ga. L. 1920, p. 183) provides that where the incapacity to work resulting from the injury is total, the employer shall pay or. cause to be paid a weekly compensation equal to half his average wages, not more than $12 nor less than $6 per week, the period of compensation in no case to exceed 350 weeks.  In 1922 (Ga. L. 1922, pp. 185, 190) this section was so amended as to make the weekly amount of compensation not more than $15 nor less than $4, except that where the weekly wage was below $4 the regular wages are to be paid.  In the case sub judice the judge of the superior court rendered a judgment

awarding the employee $2.27 per week (the employee was being paid $9.07 average weekly wages at the time of the injury), which amounts to 25 per cent. of the employee's wages prior to and at the time of his injury; and the Court of Appeals affirmed the judgment of the superior court, with direction that the amount of weekly payments be increased to conform to the requirement of the statute that the same shall not be less than $4 per week; that is, increase the amount paid weekly by decreasing the number of payments to be made.

We find, from an examination of the opinion of the trial judge, that his finding is based upon the assumption that the wages the employee was receiving at the time of his injury are assumed to have been fixed after consideration of the fact that he had received a prior injury when only about eight years of age, as a result of which he lost the lower portion of his right leg up to within three inches below the knee-joint. Both the judge of the superior court and the Court of Appeals assumed that the wages the employee was receiving had been adjusted to his condition as a man who had only one leg, and provided compensation as if he were a man with two legs; and the plaintiffs in error, now petitioners in certiorari, complain that this finding places upon the employer the burden of compensating the employee for an injury received, not while in his present employment, but years before he was ever employed. It is very plain that the controversy between the parties in this case hinges on the meaning of the provision in the conclusion of section 34, supra, that the employee "shall be entitled to compensation only for the degree of incapacity which would have resulted from the later accident if the early disability or injury had not existed." The Court of Appeals construed these words to mean that an employee who receives an injury to a leg which before his employment had been amputated to a point within three inches below the knee shall be compensated just as if he had two legs. It was said in the opinion (35 Ga. App. 772, 774, 135 S. E. 103): "In other words, section 34 has nothing to do with the particular provision by which the compensation will be determined, but simply means that whatever capacity a man has after some other accident, misfortune, or injury, shall ordinarily be considered as the *unit* from which to determine the percentage of his subsequent impairment. The claim-

ant had not lost his leg.  He had lost a little more than his foot.. The employer accepted him as he was and paid him as he was, and for the purposes of this case he will be regarded as a two-legged man.  If he had lost all the remaining portion of the abbreviated member, or all of the use of it, he would have received compensation at the rate of 50 per cent. of his average weekly wages for 175 weeks.  Having lost 50 per cent. of the use of such remaining portion, he is entitled, under subsection (r), to be paid 50 per cent. of the amount which he would have received for a total loss of use."  This is the meaning attributed to section 34 in behalf of the claimant, the employee, in this case.  This is the construction most favorable to employees as a class; and in the personal opinion of the writer, this should be the law.

On the other hand, the employer contends that by the provisions of section 34, giving due force to the word "only," the General Assembly intended to make an exception with reference to employers, by saying that an employee who had already sustained a permanent injury in a former and different employment should not recover compensation for the prior loss from one who was in no way chargeable therewith.  It is strongly insisted, that, unless the language of section 34 now under consideration be thus construed, employers will be subjected to the burden of compensating maimed or injured employees for accidents and injuries previously suffered by them, and in consequence of such a construction and in the exercise of ordinary business prudence persons who have suffered such injuries will be deprived of the opportunity of obtaining employment; and that the legislature had these considerations in mind at the time of the passage of the act in declaring that one thus injured is "entitled to compensation only for the degree of incapacity which would have resulted from the later accident," giving the words, "if the early disability or injury had not existed," as a mere direction to the industrial commission and the courts to ascertain the degree of incapacity existing prior to the later injury, which should be taken into consideration and excluded from the award for the later injury by diminishing the later award in proportion to the diminished earning capacity which a maimed or injured workman may be shown to have, as compared with one who had suffered no injury and was in ordinary and normal condition.  In other words, plaintiffs in certiorari

contend that the lawmakers in effect say that when an employee has suffered an injury in a prior employment, the employer in the subsequent employment is liable to compensate a man who has lost a quarter of a leg as a man having a leg and three quarters, instead of a "two-legged man" as ruled by the Court of Appeals. However, as subsection (o) of section 32 of the workmen's compensation act deals only with the loss of "a leg," the comparison of the contentions of the parties can be more exactly stated by saying that the defendant in error contends that in the consideration and determination of the amount of the award he should be treated as if the leg which was injured was for all practical purposes a leg within the provisions of subsection (o), while the plaintiffs in error contend that the employee should be treated as a man who had only 15 per cent. of a leg at the time of the injury, according to the finding of fact by the Industrial Commission, and that compensation for his loss should be limited to 50 per cent. of this reduced earning capacity as found by the commission, which would be approximately 7½ per cent. of his normal earning capacity if the defendant in error had never been injured at all. As stated above, speaking for myself only, it seems to me that the reasoning of the learned trial judge, who set aside the judgment of the Industrial Commission on the appeal, is unanswerable and accords with justice in such circumstances as those disclosed by this record; but in this, as all other cases, this court by its decisions can not lawfully or properly make response to any question other than the inquiry, "what says the law?" We agree with our learned brethren of the Court of Appeals as to the perplexity of the questions involved in this case; and the petition for certiorari was granted because this court recognizes the far-reaching and important consequences involved in the language of section 34, construed, as it must be, with other parts of the workmen's compensation act of 1920 and subsequent amendments.

In the well-considered opinion of Judge Bell of the Court of Appeals, three cases from other jurisdictions are cited, and Corpus Juris, § 84, is referred to. It is pointed out, however, in the brief of counsel for the plaintiffs in error that by reason of an amendment to the workmen's compensation act of New York the case from that State, cited by the Court of Appeals, is no longer in point, since the New York Court of Appeals has now adopted the

rule they contend for with regard to the allowance of compensation for a later injury to one who has been previously injured. An examination of a number of cases from other jurisdictions develops the fact that the decision in each case is naturally based upon the construction of the peculiar wording of each of the workmen's compensation acts, and this has resulted in a contrariety of opinions almost evenly balanced in number. Regardless of this, while the opinion of another court, by reason of the cogency of its reasoning and clarity of illustration, is often valuable as persuasive authority, a court of last resort in any and every instance must decide the point at issue for itself, following only as its fixed guiding star the ascertainment and enforcement of the intention of the legislature as it expressed its will in the language of the statute. The distinct existence and perfect independence of each of the three co-ordinate branches of the government, so explicitly declared in the constitution of this State, denies to its courts the right to legislate, and makes it just as much the duty of the judge, whether trial or appellate, to enforce a law which he may not personally favor as one which may happen to coincide exactly with his individual views. It seems to me that if one who has received a prior injury, as provided in section 34, is entitled to compensation only "for the degree of incapacity which would have resulted from the later accident if the early disability or injury had not existed," it would be necessary to ascertain, as the commission did in this case, what was the degree of incapacity which resulted from the first accident or injury. In this case the commission found that the amputation of the leg of the defendant in error amounted to between eighty-five and eighty-six per cent. loss of use of his leg. The commission was commanded by the terms of section 34 to award compensation to one previously injured only for the degree of incapacity which as a matter of fact did result from the later accident, so as to exclude the effects of the first accident or injury, and so as to allow compensation only for the later accident, without finding out the degree of incapacity resulting from the first injury; and if the claim is to be treated as if there had been no prior accident, why should the law provide expressly that the injured person is entitled only to compensation from the later accident? If the provision of section 32 as to loss of the use of a leg may be so construed as to include and apply

to the loss of the use of a part of a leg, what necessity could there have been for the passage of section 34?

It seems to us that the purpose of the legislature in the passage of section 34 was to make an exception to the measure of compensation provided in section 32 in instances where the use of a member of the body was not entirely lost, but was diminished, which did not fall under other provisions of the compensation act by reason of the fact that the injured person had been previously injured. In other words, persons who have never been previously injured are placed in one class, and the provisions of the law are in the main applicable to them. Section 34 relates to a different class, those who may have been previously injured at a time different from the pending claim. Section 34 deals with nothing else. But the fact that the legislature has divided those who may have claims for injuries into two classes is not enough of itself to be conclusive; for it was within the power of the General Assembly to have declared that although one had been injured before, he might nevertheless obtain compensation as "if the early disability had not existed," and this could be reasonably construed to mean that a man who had suffered the loss of only a portion of his leg might be compensated as if he had not been previously injured, and he would be entitled to compensation in the proportion that his incapacity to labor bore to the value of his services at the time of his last injury. However, it is our opinion that the use of the word "only" indicates that it was the purpose of the legislature to protect employers against liability to compensate an employee who had been previously injured, and not the intention of the General Assembly by the enactment of section 34 to provide a means by which an employee who had been injured at some previous time might collect compensation just as if he had never been injured or a previous disability had never existed, and thereby receive compensation just as if the prior injury had never been sustained. To hold that the defendant in error may be treated as if he were a two-legged man in determining the value of the loss of use of a portion of a leg would be to leave out of consideration and completely obliterate the fact that he had been somewhat injured in a previous accident for which the employer was not responsible; and if this is the true law, the enactment of section 34 was, in our opinion, a useless formality, and certainly ineffective to prevent a later

employer from perhaps compensating in part for a prior injury.

What is the duty of the industrial commission under the terms of section 34? Clearly, to ascertain the fact whether the applicant has received a prior permanent injury, for the reason that the section declares that he shall "be entitled to compensation only for the degree of incapacity which would have resulted from the later accident if the early disability or injury had not existed." This separates from everything else in the case the question as to what was the precise amount of compensable injury accruing to the claimant by reason of the only injury for which the employer can justly be held responsible. It being declared that it shall be thus separated, how can the quantum of compensation be ascertained? Clearly, the circumstances of the injured employee's case comprise three separate elements which must have been within the contemplation of the lawmakers: the earning capacity of a normal man in the same employment in the same or a near-by location, the percentage of reduced earning capacity by reason of the prior injury, and the proper amount to be paid by the employer for the injury resulting while the employee was in his service. In section 2 of the workmen's compensation act as amended in 1922 (Acts 1922, p. 185) provision is made for the ascertainment of the value of the service of an injured employee where there has been no agreement as to wages, or where wages for services have not been fixed on account of the recency of employment; and it is provided that the earning capacity of one who has never received a prior injury may be ascertained by proof of the wages allowed under similar circumstances in the same neighborhood. We see no reason, if it was the purpose of the General Assembly to pay him only for the injury sustained, without regard to the prior injury, "but as if the early disability or injury had not existed," why it would not be the duty of the commission to apply the same rule in ascertaining what would have been the normal earning capacity at that time in the employment in which he was engaged, if he had been a normal man who had never been injured. Then, since he has been injured, but in arriving at the later injury for which he alone is to receive compensation, how can the amount of this compensation be reached, unless the commission ascertains by deducting from the wages of the normal man the percentage of injury due to the former accident, and thus reaches the com-

pensation for the degree of incapacity which resulted from the later accident? As we have stated, if he were to be treated as a normal man at the time of the second injury, there would have been no necessity whatever for the passage of section 34. To construe the conclusion of the section as authority for treating a man who had received a previous injury just as if he had never received such injury would be to render section 34 absolutely nugatory. We conclude that the Court of Appeals erred in affirming the judgment of the superior court reversing the finding of the industrial commission, since in our opinion the latter judgment is in conformity with the law if the language used in section 34 be given its ordinary meaning when construed with the entire context.

<em>Judgment reversed. All the Justices concur.</em>