32680.   DUNN *v.* HARTFORD ACCIDENT & INDEMNITY
COMPANY *et al.*

DECIDED MARCH 10, 1950.   REHEARING DENIED MARCH 27, 1950.

*Phillips, Johnson & Williams,* for plaintiff.
*Neely, Marshall & Greene,* for defendants.

MacINTYRE, P. J.  There is no dispute as to the claimant's right to compensation.  The sole question is the amount to which he is entitled, and, particularly, the extent of the injury out of which the right to compensation arose; that is to say, did the State Board of Workmen's Compensation, as a matter of law, correctly determine the degree or percentage of loss of vision in the claimant's left eye attributable to the injury sustained in the employ of the Atlanta Terra Cotta Company, the current employer?  It appeared from the evidence adduced upon the hearing that the claimant had sustained at least one other injury to the same eye while he was in the employ of another company several years before the present injury.  The hearing director was authorized to find that as a result of the earlier injury the claimant, *without glasses,* had a visual efficiency in his left eye of 20 percent or that he had sustained a loss of vision in his left eye of 80 percent, or in other words his visual acuity in his left eye was 20/200.  See Snellen Notations Table, otherwise known as the Table for Appraisal of Loss of Visual Efficiency (State of Georgia Workmen's Compensation Laws, 1947 ed., p. 84).  The director was also authorized to find, however, that when fitted *with glasses,* the visual efficiency in the left eye rose to 95.7 percent; the loss of vision fell to 4.3, or in other words, the visual acuity, according to the Snellen Notations, became 20/25.  At this point, to recapitulate, under the findings of the director, the claimant had, *without glasses,* lost 80 percent of the visual efficiency in his left eye, and, according to the accepted standard he was industrially blind.  See Snellen Notations, supra.  However, *with glasses,* the visual efficiency in his left eye was only 4.3 percent less than the visual efficiency of the average eye.

After the injury to his left eye, sustained in his employment at the Atlanta Terra Cotta Company, the director was authorized to find, that the visual efficiency of that eye, *without glasses,* was 3.3 percent and the percentage of loss of vision in that eye, *without glasses,* was 96.7 percent, or that the claimant had a visual acuity in his left eye according to the Snellen notations, of 20/400. The director was further authorized to find that following this last injury no improvement in the visual acuity of the left eye could be effected by the use of glasses. Thus, *with* or *without glasses,* after the last injury the degree of loss of vision in the. left eye was 96.7. The primary question is, therefore, what portion of the percentage of loss of vision should be attributed to the last injury? To determine this, should the fact be taken into account that after the first injury, which rendered the claimant industrially blind, the claimant's vision was almost completely restored with the aid of glasses, or should the glasses be left entirely out of the picture? Counsel for the insurance carrier and employer contend that the corrected vision may not be considered under the authority of Code § 114-408 and the construction placed on this section in *American Mutual Liability Ins. Co.* v. *Brock,* 165 *Ga.* 771 (142 S. E. 101). Code § 114-408 provides: "If an employee who suffers an injury in his employment has a permanent disability or has sustained a permanent injury, such as specified in § 114-406, suffered elsewhere, he shall be entitled to compensation only for the degree of incapacity which would have resulted from the later accident if the earlier disability or injury had not existed." The Court of Appeals in *American Mutual Liability Ins. Co.* v. *Brock,* 35 *Ga. App.* 772 (135 S. E. 103), construed this section to mean that where an employee has suffered one injury in one employment and later suffers a second injury in another employment, in determining the extent of the second injury to the same member, the employee should be looked upon as having never sustained the first injury. In reversing this court in that case the Supreme Court said: "Properly construed, the language employed in section 34 of the Workmen's Compensation Act of 1920 (Acts 1920, p. 167 [Code § 114-408]) evidences an intention on the part of the General Assembly to subject employers only to liability for accidents, misfortunes, or injuries resulting to their

employees during the time of service or employment, and the provisions of this section were evidently embodied in the act with this end in view. . . If the language . . be so construed as to render an employer liable for an injury accruing to an employee in his employment, who has already been previously injured in a prior employment, just as if such employee had never been previously injured, the incorporation of this section in the act would be ineffectual and nugatory." The total effect of the ruling is that, where an employee has sustained two permanent injuries superimposed one upon the other, and the injuries have been sustained in different employments, in determining the extent of the employee's disability attributable to the injury received during his last (current) employment, the Board of Workmen's Compensation should first determine the total disability found to exist after the last injury, determine the disability found to exist after the earlier injury sustained elsewhere and subtract the latter from the former, thereby arriving at the extent of disability to be attributed to the last injury and compensated by the last employer. The hearing director followed this rule exactly in making his award. He determined the percentage of loss of vision in the claimant's left eye after both injuries to be 96.7 percent. He determined the percentage of loss of vision after the first injury, and after the employee had been fitted *with glasses* and his vision corrected, to be 4.3 percent. He subtracted the latter disability from the total disability after both injuries and found the percentage attributable to the last injury to be 92.4 percent. It is elementary that this finding of fact is conclusive upon the reviewing courts. The *Brock* case laid down the mathematical procedure to be followed. The director followed it. There is nothing in the *Brock* case which says that the board may not take into consideration any improvement effected by artificial members or means in determining the extent of injuries where the question of the *loss of use* of the member is under consideration. The loss of the use of a member and the loss of the member are distinct questions. In the *Brock* case the claimant had lost a little more than his foot, but the question before the board in that case was the loss of the use of the leg. The Court of Appeals treated the question of the loss of the use of the leg as though there had been no first in-

jury at all. The Supreme Court in reversing this court in that case said, in effect, you may not disregard altogether the factum of the first injury. You must take it into account and determine the extent of disability caused by it, whatever it may be, in order to determine to what extent it bore upon the total extent of disability after the second injury; thereby you will place upon each employer his proportionate burden. The Supreme Court did not say that, in making that determination, the improvement effected by the artificial member or means can not be taken into account. In their liberal construction of the act in favor of the employee the courts endeavor to be fair as between employee and employer and also as between employer and employer. Would it be just to say to the first employer whose employee has received an eye injury resulting in a permanent partial loss of vision, you may not take advantage of the fact that with glasses the employee's vision may be restored within 4.3 percent of the visual efficiency of the average eye? Not in an era in which the "normal person" is the wearer of glasses. In a recent survey 69 percent of the population of the United States was shown to wear glasses. The intent of the General Assembly was to place upon each employer the burden of his proportionate share of the damage done employees in his employment; that is to say, the employer is to indemnify the employee for the loss the employee sustains by reason of that employment (within the limits of indemnification set by the statute). The cases, treating of the question of whether or not the fact that loss of vision may be corrected by use of glasses shall be taken into consideration in determining the extent of disability, are numerous and are collected in the following annotations: 8 A. L. R. 1330; 24 A. L. R. 1469; 73 A. L. R. 716; 99 A. L. R. 1507; and 142 A. L. R. 822. There are conflicts throughout all the cases, and it will serve no purpose here to endeavor to distinquish the cases. It suffices to say that there is no decision in this State of which we are aware that conflicts with what we here have held and as we interpret the Workmen's Compensation Act the fact that an employee's vision can and has been corrected should be taken into account in determining the extent of his loss of vision. The eye is a wondrous mechanism, and vision is an ephemeral power, the loss of vision is not comparable to the loss

of the use of a foot, a leg, or finger. However, we are not to be understood as saying that where an employee suffers the loss of part of his vision which may be restored that he has lost nothing as a matter of law, the finders of fact will determine the extent of the loss in each individual case under its facts.

For the foregoing reasons the superior court erred in vacating and setting aside the award of the State Workmen's Compensation Board, which affirmed the award of the single director.

*Judgment reversed. Gardner and Townsend, JJ., concur.*

### ON MOTION FOR REHEARING.

MacIntyre, P. J. The case of *Wisham v. Employers Liability Assurance Corporation*, 55 *Ga. App.* 778 (191 S. E. 489), was not overlooked by the court. The director in that case made no finding whatsoever with regard to whether the glasses, which the claimant refused after the second injury, would or would not improve his vision.

*Rehearing denied. Gardner and Townsend, JJ., concur.*