33432.   BROWN *et al. v.* SHERIDAN *et al.*
33439.   RICHARDSON *v.* BROWN *et al.*

Decided April 13, 1951.

*Irwin & Dyer,* for plaintiffs in case No. 33432.

*Sam Adams Dorsey, Dorsey & Dorsey, Foy L. Hood,* for defendants in case No. 33432.

*Sam Adams Dorsey, Dorsey & Dorsey, Foy L. Hood,* for plaintiff in case No. 33439.

*Irwin & Dyer, Smith, Partridge, Field, Doremus & Ringel,* for defendants in case No. 33439.

TOWNSEND, J. (After stating the foregoing facts): ■ ■ A decree of divorce awarded in another State or country may be collaterally attacked on the grounds of lack of jurisdiction and fraud in its procurement. *Marchman* v. *Marchman,* 198 *Ga.* 739 (32 S. E. 2d, 790); *Christopher* v. *Christopher,* 198 *Ga.* 361 (31 S. E. 2d, 818); *Azar* v. *Thomas,* 206 *Ga.* 588 ( 57 S. E. 2d, 821). Certainly this rule applies where the defendant fails to appear. See Johnson *v.* Muelberger, ——U. S.—— (Case No. 296, decided March 12, 1951). The Alabama decree obtained by Hoyt Sheridan in 1945 was successfully attacked by the respondent in that case, Jeanette Brown, who testified that her signature on the acknowledgment of service was a forgery and that she had not in fact been served or received any notice of the pending action. It also appears that the decedent could not have resided in Alabama more than five months before receiving the divorce. The Alabama law on residence was not pleaded or introduced in evidence, although the statute and a decision of the Supreme Court of Alabama showing one year's residence before bringing the action to be required was presented to the director and he was requested to take judicial notice thereof. However, since it was not introduced in evidence, this feature of the case is not considered. The board was authorized to find from the testimony of Jeanette Brown that the 1945 Alabama divorce decree was void for fraud in its procurement, and that at the time Priscilla and Hoyt Sheridan were married in February, 1946, he was still married to his second wife and incapable of contracting a valid marriage.

■ On March 3, 1947, Jeanette Sheridan (Brown) obtained a valid divorce from the decedent in Madison County, Georgia, under the terms of which the defendant was forbidden to remarry. Such disabilities unremoved constitute a bar which renders a subsequent marriage in this State invalid. *Bell* v. *Bell,* 206 *Ga.* 194 (56 S. E. 2d, 289); *Baker* v. *Baker,* 168 *Ga.* 478 (148 S. E. 151); *Pennaman* v. *Pennaman,* 153 *Ga.* 647 (112 S. E. 829). However, a statute prohibiting the guilty party to

a judgment of divorce from marrying again is without effect outside the territorial limits of the prohibiting State. *Montgomery* v. *Gable,* 61 *Ga. App.* 859(1) (7 S. E. 2d, 426). Consequently, the marriage of the contracting parties in Georgia on February 12, 1946 being void, and the decedent being under disabilities to contract a marriage in this State, there was no marital relationship unless it occurred between March and November, 1947, while the parties were living in Alabama. A valid marriage consummated in another State, although one of the parties be laboring under a disability in Georgia, must also be held to be valid in Georgia, provided the parties acted in good faith and did not go to the foreign State for the mere purpose of evading the provisions of the Georgia law. Code, § 53-214; *Montgomery* v. *Gable,* supra.

■ It is undisputed that no ceremonial marriage was consummated in Alabama during the parties' residence there after March, 1947. Assuming, since the Alabama law as to common law marriage was not pleaded, that the common law is in force in that State as interpreted by Georgia decisions (*Ousley Co.* v. *Ledbetter,* 44 *Ga. App.* 375, 161 S. E. 634; *Trustees of Jesse Parker Williams Hospital* v. *Nisbet,* 189 *Ga.* 807, 7 S. E. 2d, 737), the evidence is undisputed that no express common-law agreement to remarry was entered into during that time. This leaves as the only question whether the circumstances of the case would justify the court in indulging a legal presumption that a valid marriage contract arose by implication. "The doctrine that cohabitation continued after the removal of the impediment to an invalid marriage validates the marriage is not based on the theory of ratification of the earlier marriage, but on the theory that a new common-law marriage is contracted after the removal of the impediments to the marriage of the parties." 55 C.J.S., *Marriage,* § 36. In *Smith* v. *Reed,* 145 *Ga.* 724 (89 S. E. 815, L.R.A., 1917 A, 492), it is held as follows: "If the impediment [to a void marriage] is removed and the matrimonial cohabitation continues it is to be presumed that the intent to be husband and wife expressed in the ceremonial marriage continues, unless the contrary appears, and the continued cohabitation after the removal of the impediment is to be considered as under such an intent and declaration rather

than with an unlawful intent." See also *Murchison* v. *Green*, 128 *Ga.* 339 (57 S. E. 709) ; *Hamilton* v. *Bell*, 161 *Ga.* 739 (132 S. E. 83) ; *Heflinger* v. *Heflinger*, 161 *Ga.* 867 (132 S. E. 85) ; *Hawkins* v. *Hawkins*, 166 *Ga.* 153 (142 S. E. 684) ; *Harper* v. *Atlanta & West Point R. Co.*, 33 *Ga. App.* 259 (125 S. E. 885) ; *Addison* v. *Addison*, 186 *Ga.* 155 (1) (197 S. E. 232) ; 104 A.L.R., Annotation, p. 12. As pointed out in these cases, however, the presumption will only be indulged where there is good faith and innocence of intent on the part of the marriage partners. While in some of these cases it would appear that one of them must necessarily have known of the impediment, in none does it appear that both were aware of the illegality of their marital relationship. On the contrary, the party claiming the right, and in favor of whom the presumption of marriage is indulged, must be innocent of any intent to enter into an' illegal marital relationship. As stated in *Smith* v. *Reed*, supra, "If a man and woman begin to cohabit, not as man and wife, but as a meretricious cohabitation, their continued cohabitation will be presumed to continue on the same basis unless something is shown to the contrary." See also *Drawdy* v. *Hesters*, 130 *Ga.* 161 (60 S. E. 451) ; *Ellison* v. *Aiken*, 74 *Ga. App.* 541 (6) (40 S. E. 2d, 441) ; *Rainey* v. *Moon*, 187 *Ga.* 712, 716 (2 S. E. 2d, 405) ; *Pickren* v. *Pickren*, 190 *Ga.* 609, 611 (10 S. E. 2d, 40). The evidence in this case is undisputed that the acknowledgment of service of the Alabama divorce action by the defendant Jeanette Sheridan was a forgery. She affirmatively testified to this fact. The purported witnesses to her signature were never located or shown to have been in existence. There was no testimony that the signature was in her handwriting. This being so Hoyt Sheridan, the plaintiff in that case, must have known that the divorce was fraudulently obtained and that he was incapable of contracting marriage. His son, Hoyt Jr., testified that his father had told him that Priscilla forged Jeanette's name in the acknowledgment of service to send to Alabama in the divorce action. The testimony was admissible because "where equivocal conduct such as cohabitation is relied upon as a circumstance material to the issue [of marriage vel non], declarations of one of the parties since deceased, made pending the period of cohabitation disaffirming the marriage, are admissible under the

principle of res gestae, for the purpose of showing the character of the cohabitation." *Drawdy* v. *Hesters*, supra; Code, §§ 38-302, 38-309. Objection to its admission was made only on the ground that it was hearsay, and it is not objectionable for that reason. It is testimony which if believed by the board would have authorized them to find that Priscilla Sheridan as well as her husband were aware of the invalidity of the divorce decree and their subsequent marriage, and that their relationship was illegal in its inception. Under such circumstances no presumption of a new common-law marriage arises in the absence of evidence affirmatively showing that pending the illicit relationship and after the disability had been removed the parties entered into an agreement to become husband and wife. Neither party was aware of the Georgia divorce obtained by Jeanette Sheridan, for which reason no new agreement subsequent thereto was possible for them.

The full board on appeal found that no valid marriage had been entered into between the deceased and Priscilla Sheridan, as a result of which she must be excluded from the award as a total dependent. This finding is supported by evidence and is therefore conclusive upon the appellate courts. *Hamner* v. *White*, 80 *Ga. App.* 648 (56 S. E. 2d, 653); *Dunn* v. *Hartford Accident & Indemnity Co.*, 81 *Ga. App.* 283 (58 S. E. 2d, 245); *Lumbermen's Mutual Casualty Co.* v. *Kitchens*, 81 *Ga. App.* 470 (59 S. E. 2d, 270). The judge of the superior court erred in reversing the award of the full board which had denied compensation to Priscilla Sheridan in Case No. 33432.

■ Inasmuch as Priscilla Sheridan was not the widow of the deceased it follows that her daughter by another marriage, Diana Richardson, had no relation to the decedent and no right to share in the award. The judge of the superior court did not err in affirming the award of the full board which denied compensation to Diana Richardson in Case No. 33439.

*Judgment reversed in Case No. 33432. Judgment affirmed in Case No. 33439. MacIntyre, P.J., and Gardner, J., concur.*