821 So.2d 323 (2002)
Susan I. SMITH, Appellant,
v.
Leslie ANDERSON and Tammy Larae Mulkey, Appellees.
No. 2D01-301.
District Court of Appeal of Florida, Second District.
June 5, 2002.
Rehearing Denied July 19, 2002.
*324 Charles R. Mayer, Highland City, for Appellant.
Glenn T. Shelby, Lakeland, for Appellees.
COVINGTON, Judge.
Susan Smith appeals the trial court's amended order granting summary judgment in favor of Leslie Anderson and Tammy Larae Mulkey. Ms. Anderson and Ms. Mulkey, the adult children of decedent Henton Smith, brought this action for declaratory judgment. Their rights to certain pieces of property, as well as Ms. Smith's rights, depend on whether Ms. Smith and the decedent were legally married. In turn, Ms. Smith filed a counter-claim alleging that Ms. Mulkey owed her $4000. Because there are genuine issues of material fact regarding the counter-claim, we reverse the trial court's order granting summary judgment in favor of Ms. Mulkey. We also conclude that the trial court correctly determined that Ms. Smith and the decedent were never legally married.
Ms. Smith and the decedent participated in a marriage ceremony in Georgia on November 22, 1980.[1] However, the decedent's divorce from his first wife was not final until February 18, 1981. Therefore, he was unable to enter into a valid marriage with Ms. Smith. Although the decedent became aware that the final judgment of dissolution was not entered until February 18, 1981, he never participated in a *325 second ceremonial marriage with Ms. Smith.
At all times relevant to this case, both Ms. Smith and the decedent were Florida residents. After the ceremony in Georgia, Ms. Smith and the decedent returned to Florida. In her deposition, Ms. Smith stated that she and the decedent were married in Georgia so that her aunt would be able to attend the ceremony. Ms. Smith also stated that she and the decedent traveled to Georgia less than twice a year. It was also Ms. Smith's testimony that she and the decedent held themselves out as husband and wife; they filed joint tax returns and owned property together.
The decedent died on July 9, 1998. On November 20, 1998, the decedent's children filed a petition for administration of their father's estate and a petition to declare Ms. Smith's marriage to the decedent invalid. The trial court found that because Ms. Smith and the decedent never resided in Georgia, their marriage did not ripen into a valid common-law marriage under the laws of Georgia. Thus, the trial court found that Ms. Smith and the decedent were never legally married. We agree.
Florida does not recognize the validity of common-law marriages contracted in Florida after 1968. Anderson v. Anderson, 577 So.2d 658, 660 (Fla. 1st DCA 1991) (citing § 741.211, Fla. Stat. (1969)). However, Florida does recognize common-law marriages that are entered into in states that do accept common-law marriages. Id. (citing Johnson v. Lincoln Square Props., Inc., 571 So.2d 541 (Fla. 2d DCA 1990)). "[T]he validity of a marriage is to be determined by the law of the jurisdiction where the marriage was entered into." Id.
According to section 19-3-1, Georgia Statutes (1980), a valid marriage in Georgia requires: (1) parties able to contract; (2) an actual contract; and (3) consummation according to law. Here, because the decedent was still married when he participated in the ceremonial marriage with Ms. Smith, he was unable to contract a valid marriage.
Ms. Smith argues that once the decedent's divorce was final, their void marriage developed into a valid marriage according to section 19-3-5(b), Georgia Statutes (1981). That statute provides in pertinent part that "after removal of the impediment to marriage, a subsequent free and voluntary consent and ratification of the marriage accompanied by cohabitation as husband and wife shall likewise render the marriage valid."
Georgia courts have held that, when a marriage is invalidated, the subsequent removal of the invalidating impediment causes a new common-law marriage to be created. Carr v. Walker, 205 Ga. 1, 52 S.E.2d 426, 431 (1949); see also Brown v. Carr, 198 Ga.App. 567, 402 S.E.2d 296 (1991); Brown v. Sheridan, 83 Ga.App. 725, 64 S.E.2d 636 (1951). Significantly, section 19-3-5, Georgia Statutes, does not validate the original ceremonial marriage. Instead, a new common-law marriage emerges.
Here, when the decedent's divorce was finalized, both he and Ms. Smith were living in Florida, as Florida residents. Thus, if a common-law marriage were formed between Ms. Smith and the decedent, it would have been created while they were Florida residents. The question presented to this court is whether Florida should recognize Ms. Smith's relationship to the decedent as a valid common-law marriage under the laws of Georgia, when the parties never resided in Georgia as husband and wife.
In Kersey v. Gardner, 264 F.Supp. 887 (M.D.Ga.1967), the issue before the court was whether the plaintiff and the decedent *326 had established a valid marriage under Georgia law. The court noted that three requirements are necessary to establish a common-law marriage in Georgia, including "consummation by cohabitation in Georgia." Id. at 889. Citing to Kersey, the court in Brack v. Brack, 121 Mich.App. 585, 329 N.W.2d 432, 434 (1982), noted that "[t]here exists at least some authority that the cohabitation must occur in Georgia." There are no Florida cases directly on point. However, in Anderson, 577 So.2d at 659, the First District considered whether a couple, who had subsequently moved to Florida, had established a valid common-law marriage in Georgia. In finding that a common-law marriage existed, the court specifically recognized that "[t]he uncontroverted evidence ... established that the parties lived, cohabited, and held themselves out as husband and wife in the State of Georgia." Id. at 659. In the case at bar, the decedent and Ms. Smith never resided in Georgia. At all times relevant to this case, they were both Florida residents. Ms. Smith stated in her deposition that she visited relatives in Georgia less than twice a year.
Courts in New York have held, in workers' compensation cases, that no minimum stay in Georgia is required to establish a valid common-law marriage in Georgia. See Mott v. Duncan Petroleum Trans., 51 N.Y.2d 289, 434 N.Y.S.2d 155, 414 N.E.2d 657 (1980); Coney v. R.S.R. Corp., 167 A.D.2d 582, 563 N.Y.S.2d 211 (1990); see also Katebi v. Hooshiari, 288 A.D.2d 188, 732 N.Y.S.2d 382 (2001) (stating, in a divorce proceeding, that the couple's family vacations to Georgia established a valid common-law marriage in Georgia). We decline to accept this reasoning, particularly with regard to two people who never claimed to be Georgia residents or otherwise expressed an endeavor to become such.
Other states that do not recognize common-law marriages have refused to recognize such marriages when they have been contracted in other states by their own citizens. In Metropolitan Life Insurance Co. v. Chase, 189 F.Supp. 326 (D.N.J.1960), the court considered whether New Jersey residents had established a valid common-law marriage in the District of Columbia. The court noted that the couple had resided in New Jersey at all relevant times and that their trips to the District of Columbia did not establish a valid common-law marriage. Specifically, the court noted that:
It is my view that the public policy of New Jersey as expressed in the statute precludes recognition of any common law marital relationship which may have been acquired through the cohabitation and holding out upon the occasions of the parties' visits to the District of Columbia while retaining their respective domiciles in New Jersey.
Id. at 330; see also Lynch v. Bowen, 681 F.Supp. 506 (N.D.Ill.1988) (holding that Illinois would not recognize a common-law marriage contracted in another state by one of its residents).
Here, Ms. Smith and the decedent, while Florida residents, traveled to Georgia and participated in a marriage ceremony. The couple then returned to Florida, where they continued to reside until the decedent's death. The couple's infrequent trips to Georgia to visit relatives did not cause their otherwise void marriage to ripen into a valid common-law marriage.
With regard to Ms. Smith's counter-claim, we conclude that summary judgment was improper. Ms. Smith claimed that she loaned Ms. Mulkey $4000, which has remained unpaid. Ms. Mulkey alleged that the $4000 was a gift rather than a loan. In support of her motion for summary judgment, Ms. Mulkey presented a gift letter signed by Ms. Smith acknowledging *327 that the $4000 was a gift. The trial court concluded that this gift letter was conclusive on the issue and granted summary judgment in favor of Ms. Mulkey.
The record also contains testimony from Ms. Smith that she loaned Ms. Mulkey the $4000 to assist her in purchasing a house. According to Ms. Smith, the gift letter was necessary for Ms. Mulkey to obtain financing. Ms. Smith also testified that Ms. Mulkey agreed to repay the loan at the rate of $50 per month. There are genuine issues of material fact with regard to this issue that should properly be resolved by the trial court.
We therefore reverse and remand with regard to the counterclaim. We affirm the trial court's determination that Ms. Smith and the decedent were never legally married.
Affirmed in part, reversed in part, and remanded.
STRINGER, J., Concurs.
BLUE, C.J., Concurs in part and dissents in part with opinion.
BLUE, Chief Judge, Concurring in part and dissenting in part.
I concur in the reversal of summary judgment on Susan Smith's counterclaim. However, I dissent from the affirmance of the summary judgment invalidating the Smith marriage. I respect the reasoning of the majority opinion, but I believe the law allows and the facts of this case cry out for a decision confirming the validity of the Smith marriage.
Susan Smith and Henton Smith entered into a ceremonial marriage in the state of Georgia thirty-two days after Henton Smith attended a final hearing at which the trial judge granted the dissolution of his marriage to Ms. Anderson's and Ms. Mulkey's mother. Unfortunately this ruling was not reduced to writing, signed by the judge, nor filed until nearly four months after the hearing. Although the record reflects that Susan and Henton learned of the delayed final judgment, there is no evidence they recognized that this created a legal impediment to their marriage. Believing they were legally married, Susan and Henton lived together as husband and wife for more than seventeen years until Henton's death. They filed joint tax returns as husband and wife and purchased property titled to them as husband and wife. Until Henton's children, after his death, filed the action which is the subject of this appeal, Susan had never questioned her status as the legal wife of Henton Smith.
Because there are no Florida cases directly on point, I would follow the reasoning of the New York cases that the majority rejects. Once the impediment to a valid ceremonial marriage had been removed by the issuance of the final judgment of dissolution, Susan and Henton were entitled to have their invalid ceremonial marriage validated as a Georgia common-law marriage. The New York cases cited in the majority opinion conclude that the cohabitation requirement of Georgia law can be met by family vacations in Georgia. The record contains undisputed evidence, and the trial court expressly found, that Susan and Henton spent time in Georgia as husband and wife, which meets the criteria for a valid Georgia common-law marriage.
I am familiar with the old saw that bad facts make bad law, and I recognize the position I have taken in this case may be the embodiment of that theory. Because the result I espouse appears below the word dissent, there is little danger of mischief. And if it somehow becomes the real rule, rather than the Blue rule, I can only hope it does not result in the inequity I see today in the trial court's ruling in this case.
*328 Accordingly, I concur in the reversal of counterclaim summary judgment, but I would also reverse the summary judgment finding the marriage of Susan and Henton Smith invalid as a matter of law. Therefore, I concur in part and dissent in part.
NOTES
[1] Ms. Smith previously had been married to the decedent's brother, Cecil Smith. They were divorced in June 1980.