## SMITH *v.* SMITH *et al.*

The marriage of a boy in his sixteenth year, although declared by the code to be void in the sense of being absolutely void, may nevertheless be ratified and confirmed by continuing, after arriving at the age of seventeen years, to cohabit with his wife as such. The code of 1863 required a license, or the publication of banns, as a condition to the validity of any marriage ; but this provision of the code was repealed by the act of December, 1863, by which repeal the common law as to informal marriages was restored. The power to make marriage by consent and cohabitation being thus reinstated, the power to complete and confirm by like means an inchoate and imperfect marriage was also revived.

February 24, 1890.

Marriage. Infancy. Ratification. Contracts. Statutes. Before Judge SMITH. Muscogee superior court. May term, 1889.

Reported in the decision.

C. J. Thornton and A. A. Dozier, for plaintiff.

McNeil & Levy, for defendants.

Bleckley, Chief Justice.

The actual marriage took place in Alabama in 1880,. and was celebrated by a magistrate. Nothing is suggested as to any defect in the magistrate's authority,. whether from want of license or otherwise. The groom was between fifteen and sixteen years of age ; the bride was older. Both parties resided in Georgia, in which State a license had been applied for, and refused because of an objection interposed by the groom's mother, his father being dead. After the marriage ceremony, the parties returned immediately to Georgia, where they continued to reside. The evidence indicates that they cohabited as man and wife up to November, 1883, when the husband died, his age being then upwards of 18 years. The present suit is by the wife against the guardian of the husband and the sureties upon his bond, to recover so much of the husband's estate as the guardian may be accountable for, the plaintiff claiming to be the sole heir at law of her deceased husband. The action was defended upon the ground, amongst others,. that she was never his lawful wife, and therefore could not inherit. The statute law of Alabama as to the ages. of consent is the same as our own, namely, seventeen years in males and fourteen in females. Tested by the law of that State, the marriage was not absolutely void, but voidable only, and until disaffirmed was a marriage in fact. Beggs *v.* The State, 55 Ala. 108. Our code, §1710, however, declares that " All marriages solemnized in another State by parties intending at the time to reside in this State shall have the same legal consequences and effect as if solemnized in this State. Parties residing in this State cannot evade any of the provisions of its laws as to marriage by going into another State for the solemnization of the marriage ceremony.'"

The rights of the plaintiff, therefore, resulting from the marriage and what followed thereupon, are to be measured by the laws of this State. Prior to the code of 1863, the common law prevailed here as to the validity of the marriage relation established by mere act of the parties without any ceremonial observances, civil or ecclesiastical. *Askew* v. *Dupree,* 30 *Ga.* 173. Provisions contained in penal statutes treated the marriage of idiots or lunatics as void, and expressly declared polygamous and inter-levitical marriages void. Cobb's Digest, 814, 818, 819. By the act of 1806, (*Id.* 225) the issue of divorced parents in all cases were declared legitimate. The grounds of divorce remained as at common law (*Head* v. *Head,* 2 *Ga.* 191) until 1850. By an act of that year (Cobb's Digest, 226) the ante-nuptial causes of total divorce recognized were the following: intermarriages within the levitical degrees of consanguinity or affinity; mental incapacity; impotency; force, menaces or duress; pregnancy of the wife unknown to the husband. These same causes were recognized in the code of 1863 with two changes, the first substituting "prohibited degrees" for "levitical degrees," and the second introducing "fraud" as an additional ground. Code of 1863, §1670. By that code, which went into effect on the first day of January, the following provisions on the subject of marrriage (with others not material to this discussion) become part of our written law, viz.: "§1653. To constitute a valid marriage in this State, there must be: (1) Parties able to contract; (2) an actual contract; (3) consummation according to law. §1654. To be able to contract marriage, a person must be of sound mind; if a male, at least seventeen years of age, and if a female, at least fourteen years of age, and laboring under neither of the following disabilities, viz.: (1) Previous marriage undissolved; (2) nearness of relationship by blood or marriage as hereinafter ex-

plained; (3) impotency. §1655. Persons related by
consanguinity within the fourth degree of the civil
law, are prohibited from intermarrying. Marriages
between persons related by affinity in the following
manner are prohibited, viz. : A man shall not marry his
step-mother, or mother-in-law, or widow of his uncle,
or daughter-in-law, or step-daughter, or granddaughter
of his wife. A woman shall not marry her corres-
ponding relatives. Marriages within the degrees pro-
hibited by this section are incestuous. §1656. To con-
stitute an actual contract of marriage, the parties must
be consenting thereto voluntarily, and without any
fraud practiced upon either. Drunkenness at the time
of marriage, brought about by art or contrivance to in-
duce consent, shall be held a fraud. §1657. Mar-
riages of persons unable to contract, or unwilling to
contract, or fraudulently induced to contract, are void.
The issue of such marriages, before they are annulled
and declared void by a competent court, are legitimate.
In the latter two cases, however, a subsequent consent
and ratification of the marriage freely and voluntarily
made, accompanied by cohabitation as husband and
wife, shall render valid the marriage. §1658. To
render valid a marriage in this State, there must be
either a license previously granted by the proper officer
authorizing such marriage, or a publication of the banns
of marriage in a neighboring church, in the presence
of the congregation, for at least three Sabbath days
prior to its solemnization." The code, by these pro-
visions, innovated upon the common law in the fol-
lowing particulars :    (1) It raised the age of consent
for males from fourteen to seventeen, and for females
from twelve to fourteen; (2) it brought first cousins,
etc. within the prohibited degrees of consanguinity ;
(3) it virtually obliterated the distinction between ca-
nonical and civil disabilities, and consequently, between

void and voidable marriages ; and (4) it exacted license, or the publication of banns, as a condition to the validity of any marriage whatsoever, and thereby made marriage impossible without some preliminary from the State or the church. For there to be any marriage at all which the law would treat as valid, it had to take place under a license or after the publication of banns. In the absence of both these preliminaries, no matrimonial connection could be formed, however competent the parties might be to assume the bonds of wedlock, or however free and voluntary might be their action in attempting to do so. By applying the one word "void" to all the enumerated instances of marriage, the intention no doubt was to use it in the same legal sense as to each and every instance enumerated. The safest and most probable construction is that the sense contemplated was the strict and comprehensive one of utter nullity. This construction is borne out in some degree by what is said in section 1682 as to the effect of divorce : "A total divorce annuls the marriage from the time of its rendition, except it be for a cause rendering the marriage void originally, but in no case of divorce shall the issue be rendered bastards, except in case of pregnancy of the wife at the time of the marriage." This use of the words "except it be for a cause rendering the marriage void originally" carries the implication that any such marriage would be so utterly void as to require no judgment to dissolve or annul it. Still, there is some obstacle to this construction, for though canonical impediments rendered marriages voidable only, yet "if the cause existed previous to the marriage, and was such a one as rendered the marriage unlawful *ab initio*, as consanguinity, corporal imbecility, or the like, in this case the law looks upon the marriage to have been always null and void, being contracted *in fraudem legis*, and decrees not only a sepa-

ration from bed and board, but *a vinculo matrimonii* itself." 3 Black. Com. 94. The code deals with the subject of ratifying void marriages, expressly allowing it in the two cases of force and fraud. Under the rule that the expression of one thing is the exclusion of another, there is no probability that there was any intention to allow ratification by mere consent and cohabitation at any age whatever, if either of the parties was under the age of consent at the time when the marriage was celebrated. The phrase " consummation according to law," found in the first section above quoted (§1653), meant consummation under license, or after the publication of banns; for as there could be no valid marriage without one of these antecedents, there could, without one or both of them, be no consummation according to law. But these new conditions introduced by the code were not long acceptable to the legislature, for before they had been operative for ·a single year, the act of December 14th, 1863 (pamp. p. 48), was passed, by which section 1658 of the code was repealed, the preamble of the act reciting : " Whereas, by the above cited paragraph of the revised code of Georgia, all marriages not solemnized in conformity with the other provisions of said code are declared to be invalid; and whereas, said innovation upon the law, as it stood before the adoption of said revised code, will have the effect of giving rise to perplexing questions of legiti-` macy of children and rights of property, and to domestic unhappiness; therefore," etc. The common law as to informal marriages was thus restored and reinstated. It follows that a lawful marriage may be contracted between parties prematurely married, if at any time after arriving at the age of consent they so agree, and their marriage may become complete without the observance of any prescribed forms. If Smith and wife, after he had become seventeen years of age, had actually agreed

to live together as husband and wife, and had continued to cohabit accordingly, a true matrimonial relation would have been established between them. If cohabitation based on express agreement would have had this effect, why should not cohabitation based on acquiescence in their premature marriage have a like effect? Cohabitation referable to that marriage would seem to be as free from moral impurity, and as wholesome to private conscience and public order and decorum, as if it followed upon a new affirmative agreement consciously entered into for the distinct purpose of inaugurating marriage. Indeed, if persons who unite matrimonially whilst too young to enter wedlock are to remain together at all after coming to the full age of discretion, it would seem that the more delicate and decorous way to do it, if they can be allowed to omit public forms, is to recognize the past as not abruptly severed from the present and the future by the wide chasm which divides illicit intercourse from matrimonial union. The making of a new agreement would necessarily bring into consciousness a suggestion of something gross and repulsive in the past cohabitation. For a young husband, on consummating his seventeenth year, to propose marriage to the wife with whom he had lived for a year or two previously as a wife, might be necessary under a system of law such as that which the code attempted to introduce; but we cannot think it necessary under the old system which the legislature designed to reinstate, and did reinstate, by the repealing act of 1863. While the code put an implied negative upon the power of ratification except in the two instances enumerated, it failed to negative the power in any express terms; and we think the implied negative underwent an implied repeal by the act of 1863. The only formidable obstacle to this construction is the general legal doctrine that void contracts are not curable by ratification. But

marriage is a peculiar contract, and the marriage of infants, when over the age of seven years but under the full age of consent, is peculiar in the law of marriage itself. Indeed, the distinction between void and voidable, as applied to contracts of infants generally, is involved in much confusion. 2 Kent's Com. 234; Tyler on In. §8. In all our books, except the code, the contracts of infants are treated as generally voidable. Yet the code says (§2731), "The contracts of an infant under twenty-one years of age are void except for necessaries," etc. But coming back to the contract of marriage, the authorities all agree that under the age of seven, a child (except when reasons of state are involved) is incompetent to marry at all; but between seven and fourteen in males, and seven and twelve in females, they all agree that an inchoate and imperfect marriage may take place, which is subject to be made good by mutual ratification or confirmation after the age of consent is attained. Disability for want of age is classed with civil, not canonical, disabilities. Shelford says (Mar. & Div. 479) that it makes a marriage contract void *ab initio*, not merely voidable. Bishop says (Mar. & Div. §§147, 150, 153) that the marriage is inchoate or imperfect, and may be affirmed; that it is voidable, not void. Addison (3 Con. §1374) says it is inchoate and imperfect, not absolutely void. Pollock (Con. *57) says it is not absolutely void, but good if agreed to at the age of consent. Story (1 Con. §124) says it is voidable at the will of either party. Schouler (Dom. Rel. §24) says it is neither strictly void nor strictly voidable, but rather inchoate and imperfect. Stewart (Mar. & Div. §§51, 58, 148) declares it void to all intents and purposes unless, and until, duly confirmed. Blackstone, after treating canonical disabilities, and saying that they make marriage voidable and not *ipso facto* void until sentence of nullity is obtained, adds

(1 Com. 435) : " The other sort of disabilities are those which are created, or at least enforced, by the municipal laws. . . These civil disabilities make the contract void *ab initio*, and not merely voidable. . . And if any persons under these legal incapacities come together it is a meretricious, and not a matrimonial union." He then treats disability consequent upon having a living wife or husband, and proceeds thus : " The next legal disability is want of age. This is sufficient to avoid all other contracts, on account of the imbecility of judgment in the parties contracting ; *a fortiori*, therefore, it ought to avoid this, the most important contract of any. Therefore, if a boy under fourteen, or a girl under twelve years of age, marries, this marriage is only inchoate and imperfect ; and, when either of them comes to the age of consent aforesaid, they may disagree and declare the marriage void, without any divorce or sentence in the spiritual court. This is founded on the civil law. . . And in our law it is so far a marriage, that, if at the age of consent they agree to continue together, they need not be married again." To the same effect see 1 Minor's Institutes, 263, 264. Tyler on Infancy (§224) says : "Of course, if the parties cohabit as husband and wife after attaining the age of consent, the marriage is affirmed and cannot be avoided." Lord Coke (1 Ins. 79b) uses this language : "The time of agreement or disagreement, when they marrie *infra annos nubiles,* is for the woman at 12 or after, and for the man at 14 or after, and there need no new marriage, if they so agree ; but disagree they cannot before the said ages, and then they may disagree and marrie againe to others without any divorce ; and if they once after give consent, they can never disagree after." From Burn (2 Eccl. Law. 394) it appears that espousals could supervene upon a void marriage, and that though they who give girls

unto boys under the age of seven years do nothing, espousals would begin after the seventh year if it appeared by word or deed that the parties continued in the same mind. The latest, and perhaps the most distinct instance of void marriage furnishing a basis for the conjugal relation by acquiescence or ratification, is that of slaves after the change of their status from slavery to freedom. Mr. Bishop (1 Mar & Div. §162) in commenting upon this class of cases says: "If the parties, having been married while slaves in the form usual among this class of persons, live together as husband and wife after they are emancipated, this, their subsequent mutual acknowledgment, should be held to complete the act of matrimony, so as to make them lawfully and fully married from the time at which such subsequent living together commenced. In those localities in which mutual consent constitutes of itself, without any superadded forms, perfect matrimony, the facts thus indicated would seem to be sufficient without any aid from what took place during slavery. And where a superadded ceremony is necessary, there appears no reason why such ceremony, performed during slavery—whether it was or was not the same which the law made necessary to constitute marriage between whites, still it was the ceremony which the law of usage had established for the blacks,—should not be deemed to combine with the consent which passed after emancipation, so as to make the nupitals complete. We have seen that such is the law of marriage celebrated during a temporary insanity of the parties, or celebrated when they were too young to pass the consent which constitutes complete matrimony; and in future pages we shall see that the same rule applies to cases of fraud, of impotence, and perhaps of some other impediments." As in the case of slaves, so in that of children under the age of consent by our law,

there is no penalty imposed upon the matrimonial parties. They do not, by the mere act of marrying or going through the form of marriage, commit any offence. The marriage of such persons is not so much contrary to law as unauthorized by law. Indeed, it stands related to criminal law precisely as did the marriage of boys under fourteen, and of girls under twelve, by the common law. The only change made by the code as it now stands, since the repeal wrought by the act of 1863 above cited, is that the age of consent is moved upward and the term "void" is applied to the marriage by express statute. But the same statute applies the term to marriages procured by force or fraud, and yet it expressly allows them to become valid by ratification. This shows there is no absolute incompatibility—no positive incongruity—between void marriage and a marriage which is susceptible of being ratified and thereby made valid. Whether its validity is to date from the time of ratification only, or from the original imperfect and incomplete marriage, we need not undertake now to determine, for the present controversy does not involve that question. All we hold is, that such a marriage as we have under consideration is capable of being ratified when the parties arrive at the age of consent, and that continuous cohabitation as husband and wife after the attainment of that age is, or may be, sufficient evidence of such ratification. Of course, if either of the parties, notwithstanding their competency as to age, should be wanting in mental capacity to agree to the marriage, that would render him or her incapable of confirming it by ratification. The view we take of the main question involved in the case renders a new trial necessary.          *Judgment reversed.*