## SMITH *v.* REED.

1. If a man who had a living wife undivorced entered into a ceremonial marriage with another woman, who was not shown to have known of the former marriage, and they cohabited as man and wife for many years, and continued so to do after the death of the first wife, they will be considered thereafter as lawfully married.

2. None of the other grounds of the motion for a new trial require a reversal.

AUGUST 22, 1916.

Appeal. Before Judge Bartlett. Polk superior court. June 28, 1915.

Mrs. Mary G. Smith filed an application to the court of ordinary of Polk county for letters of administration on the estate of William H. Williams, deceased. A caveat was filed by Mrs. Willie Reed, who alleged that she was the daughter and sole heir of the decedent, and that there was no debt and no need of administration. The case was carried to the superior court by appeal. The evidence on behalf of the applicant tended to show, in brief, the following facts: William H. Williams (to whom the witnesses generally referred as William Williams) formerly lived in Wales. He married Ellen Jones in 1859, and the applicant was their daughter. He came to America, and was soon followed by his wife, about 1863. He left his wife and daughter in New York in 1865 or 1866, and went away. One witness testified that he left a place in Vermont about 1867. He was later heard from in Rockmart, Polk county, Georgia, and communications with him were had at that place, and he was seen there, where he was living. He had a little girl with him at that place, who apparently was the caveatrix. On cross-examination of some of the witnesses for the plaintiff it was brought out that Williams and Jones were very common names in Wales, and a witness stated that he knew many persons there named William Williams. It also appeared that several years after Williams left his wife she married another man. She died in 1890.

The evidence on behalf of the caveatrix was, in brief, as follows: The William H. Williams who was the father of the caveatrix was a Welshman; but two witnesses testified that he lived in Rockmart prior to 1860. In 1871 he married a widow, and the caveatrix was their child. They lived together as husband and wife for twenty or thirty years. She died in 1907, and he in 1911,

leaving his daughter (the caveatrix), whom he recognized as such, surviving him.

The jury found for the caveatrix. The applicant moved for a new trial. It was denied, and she excepted.

*Green, Tilson & McKinney* and *Bunn & Trawick,* for plaintiff.

*I. F. Mundy* and *W. W. Mundy,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

1. The court charged the jury, in substance, that if Williams married the mother of the applicant in 1859, and the applicant was the child of that marriage, but if in 1871 or 1873 he entered into a ceremonial marriage with the mother of the caveatrix and continued to live with her as his wife until and after the death of the first wife, the second wife became his legal wife, and their child, born before the death of the first wife, thus became legitimate, and would share in the distribution of the estate with the child of the first marriage. There was no evidence to indicate that the second wife had any knowledge of the existence of the first. It was contended on behalf of the plaintiff in error that this charge was erroneous; and that the correct rule was, that if Williams had a living wife when he entered into a ceremonial marriage with the mother of the caveatrix, the attempted marriage was void, and his living with her was an illicit relation, and so continued even after the death of the first wife and until a formal ceremony of marriage should be performed after that event. The evidence showed that the caveatrix was recognized by her father, and he lived with her; and while the charge did not mention that fact, or any question as to want of knowledge of the impediment by the mother of the caveatrix, no point was made on that ground either in the assignments of error or in the brief; and in view of the nature of the issue and general charge, this will not require a reversal. Civil Code (1910), §§ 3012, 3026.

There is some conflict in the authorities on this subject. A leading case holding that, where a marriage was originally illegal, subsequent cohabitation after the impediment had been removed would not suffice to show a lawful marriage, is that of Voorhees *v.* Voorhees, 46 N. J. Eq. 411 (19 Atl. 172, 19 Am. St. R. 404), and see dissenting opinion of Garrison, J., in 47 N. J. Eq. 315 (14 L. R. A. 366, 24 Am. St. R. 412) ; Collins *v.* Voorhees, 47 N. J. Eq. 555 (22 Atl. 1054, 14 L. R. A. 364). But in the later case

of Chamberlain *v.* Chamberlain, 68 N. J. Eq. 736 (62 Atl. 680, 3 L. R. A. (N. S.) 244, 111 Am. St. R. 658), it was held that when a man and woman intend to marry and live together as husband and wife, but their intent is frustrated by the existence of some unknown impediment, when the impediment is removed, and it is shown that the same intent continues, their relations are lawful. The unknown impediment referred to in that case was that the woman had a living husband whom she and the second man to whom she was married supposed to be dead. We can not concur in the reasoning in the first-cited case. If a man and woman begin to cohabit, not as man and wife, but as a meretricious cohabitation, their continued cohabitation will be presumed to continue on the same basis, unless something is shown to the contrary. But where a man and woman enter into a ceremonial marriage, thus openly declaring their intention to be husband and wife, and live together, the marriage may be void because of some impediment, and the cohabitation may not be legal; but if the impediment is removed, and the matrimonial cohabitation continues, it is to be presumed that the intent to be husband and wife, expressed in the ceremonial marriage, continues, unless the contrary appears, and the continued cohabitation after the removal of the impediment is to be considered as under such an intent and declaration rather than with an unlawful intent. At least a renewed consent might be inferred. In Campbell *v.* Campbell, 1 L. R. Scotch Div. 182, Lord Westbury said: "You must infer the consent to have been given at the first moment when you find the parties able to enter into the contract." In De Thoren *v.* Attorney General, L. R. 1 App. Cas. 686, where there was a ceremony of marriage invalid because of an impediment, though this was unknown to the parties, and a continued matrimonial cohabitation after the removal of the impediment, it was declared: "When a matrimonial ceremony took place in Scotland, the parties being ignorant of an impediment, afterwards removed, and when, believing themselves to be validly married, they lived together continuously for years as husband and wife, and were regarded as such by all who knew them, the marriage was held to have been established by the force of habit and repute, without any proof of mutual consent by verbal declaration. It must be inferred that the matrimonial consent was interchanged as soon as the parties were enabled, by the re-

moval of the impediment, to enter into the contract. The ceremony which took place, although invalid, was undoubtedly a consent by the parties to live together as husband and wife. And their subsequent cohabitation was a proof of continued consent."

In 1 Andrews' Am. Law, § 486, p. 627, it is said: "Where the inception is illegal or illicit, the ordinary presumption of continuance applies until there is a change in the circumstances, but a very slight change will be seized hold of in order to presume the marriage. Where an actual ceremony or an actual contract per verba de presenti is shown, the burden of proof is upon the party attacking the marriage to show its invalidity, and every presumption will be indulged to uphold it." Flanagan v. Flanagan, 122 Mich. 386 (81 N. W. 258); Schuchart v. Schuchart, 61 Kans. 597 (60 Pac. 311, 50 L. R. A. 180, 78 Am. St. R. 342); Teter v. Teter, 101 Ind. 129 (51 Am. R. 742); North v. North, 1 Barb. Ch. 241 (43 Am. D. 778); Donnelly v. Donnelly's Heirs, 47 Ky. (8 B. Mon.) 113, 117. See also cases gathered in the note to Chamberlain v. Chamberlain, 3 L. R. A. (N. S.) 244, supra.

In this State it has been held that where two persons entered into a ceremonial marriage and cohabited as husband and wife, although the marriage was invalid because one of them was under the age at which a valid marriage could be contracted, yet if they continued to cohabit as man and wife after he arrived at the age when they could lawfully marry, their relation was that of husband and wife. *Smith* v. *Smith,* 84 *Ga.* 440, 446 (11 S. E. 496, 8 L. R. A. 362). True the impediment there was of a different character, but the ceremonial marriage was invalid. Nothing in *Drawdy* v. *Hesters,* 130 *Ga.* 161 (60 S. E. 451, 15 L. R. A. (N. S.) 190), conflicts with the ruling here made; but the two decisions harmonize, and the former cites approvingly Andrews' American Law, referred to above.

In the present case, even if Williams knew that his first wife was living at the time of the second marriage, but the second woman whom he married ceremonially did not know of it, and after the death of the first wife they continued their matrimonial cohabitation, why should an unlawful rather than a lawful intent be attributed to the parties after the removal of the impediment? The declaration of intent to be husband and wife should be treated as continuing, nothing to the contrary appearing; and the continued

cohabitation under such circumstances should be considered as lawful rather than unlawful. Flanagan *v.* Flanagan, 122 Mich. 386 (81 N. W. 258). .

It was also urged that there had been an agreement by counsel trying the case that the only issue was as to the identity of the father of the applicant and caveatrix, and that the charge stated above should not have been given. It also appears that there was some discussion as to the legitimacy of the caveatrix. If she were illegitimate, she would have no status as a caveatrix. The court appears to have been correcting any possible misapprehension which might arise on the subject in the minds of the jury. He charged several times that if the William H. Williams who died in Rockmart in 1911 was the father of the applicant for administration, she would be entitled to a verdict in her favor. We do not think that the jury could have been misled by the charge. The controlling question of fact in the case was whether the father of the applicant and of the caveatrix was the same person. The greater weight of the evidence seemed to indicate that he was the same man. But there was some evidence to the contrary. The jury found against that contention, and we can not say that there was not sufficient evidence to sustain their verdict.

2. None of the grounds of the motion for a new trial require a reversal.     *Judgment affirmed.   All the Justices concur.*