394

RUBY LEE KEEN LIGHTSEY, Appellant, v.
MALCOLM McCUNE LIGHTSEY, et al.,
Appellees.—407 S.W.(2d) 684.

Middle Section. February 25, 1966.

Certiorari Denied by Supreme Court September 6, 1966.

Glendon M. Fisher, Jr., Nashville, for appellant.

J. W. Rutherford, Nashville, for appellees.

HUMPHREYS, J. Appellant, Ruby Lee Keen Lightsey, filed her bill for an absolute divorce from appellee, Malcolm McCune Lightsey, on grounds of cruel and inhuman treatment, and sought other relief with respect to jointly deposited funds which is not before us on this appeal.

Appellee answered, denying any misconduct, and filed a cross-bill, alleging that appellant had been married to another man at the time the parties entered into their ceremonial marriage; and prayed for an absolute divorce on the ground appellant knowingly entered into a second marriage in violation of a previous marriage still subsisting.

Appellant answered the cross-bill, denying the charges, and alleging her belief that she was divorced prior to entering into the marriage ceremony with appellee, and alleging that they continued living together as man and wife for sixteen years after her divorce from her first

husband. She subsequently amended her pleadings, alleging a common law marriage in the State of Georgia after the removal of the disability of her prior marriage, and praying a decree sustaining the validity of this common law marriage.

The proof introduced by the parties consisted of their own testimony and certain exhibits.

The trial judge found the parties entered into a ceremonial marriage on September 14, 1942, while residents of the State of Georgia; that appellee was a member of the Armed Forces and was stationed in various states including Georgia; that appellant was previously married to Myron J. Griffin in 1933, and obtained a final divorce from Griffin on September 9, 1948; that the parties continued to reside together in the State of Georgia from that date until 1950, after which appellee was stationed in England for three years; that they returned to Georgia and lived together there for one month; and have lived together continuously from the date of the marriage ceremony in September, 1942 until their separation in September, 1964, in the same manner after the divorce in 1948 as they had prior thereto. The trial court found further that appellee did not know of appellant's disability of previous marriage prior to the divorce proceedings in 1948. He dismissed appellant's bill and sustained appellee's cross-bill, granting him an absolute divorce on the ground of the prior subsisting marriage.

The trial judge seemed to accept the proposition that a valid common-law marriage subsisting between the parties subsequent to the divorce would be recognized by a Tennessee court, but was of opinion under the law of the State of Georgia and the facts of the case that no such valid subsisting common-law marriage was con-

tracted between the parties after appellant gained a divorce decree from her first husband in 1948.

Mrs. Lightsey has appealed and assigned four errors:

"1. The Judge erred in holding that the parties were not lawfully married and in granting a divorce to the defendant, instead of holding that the parties entered into a valid common-law marriage while residents of the State of Georgia. (R., p. 45)

Under Georgia law, where a ceremonial marriage is invalid because of an existing prior marriage of one of the parties, if, after the disability is removed, they continue to live together as man and wife, there is a valid common-law marriage entered into after the removal of the disability.

2. The Judge erred in holding that the burden was upon complainant to prove the existence of an agreement between the parties to cohabit as husband and wife after the disability of her prior marriage was removed. (R., p. 44)

Under Georgia Law, there is a presumption that where parties enter a ceremonial marriage while one is under the disability of a previous marriage, unknown to the other, and the disability is removed, the intent to be husband and wife expressed in the ceremonial marriage continues when the parties continue cohabitation, the presumption being that there is an intent of lawful rather than unlawful cohabitation."

Assignments 3 and 4 are not copied as the first two raise the cardinal points at issue.

This appeal presents the questions whether a valid common-law marriage existed between the parties, and

whether Tennessee, which does not recognize common-law marriages as contractable between its residents, will recognize such a valid, subsisting common-law marriage as a defense against a suit for divorce under the facts and circumstances existing in this case.

Before entering upon a consideration of the legal questions presented by this appeal, we think it is important that certain propositions of fact which appear without much contradiction in the record be stated. These are: First, the relationship between the parties was not meretricious. This is evidenced by their first entering into a ceremonial marriage, and the fact appellee knew nothing of the prior marriage. Second, the evidence preponderates in favor of the proposition the appellant thought she had divorced her first husband, and did not discover to the contrary until she made a job application in 1944, which resulted in an investigation during the course of which it was learned that she was not divorced as she had thought. Her positive testimony is that she consulted a legal aid agency in Atlanta with respect to divorcing her first husband, and appeared at a place and went through at least some form of proceeding which she states under oath she took to amount to a divorce proceeding and that the attorney assisting her told her she was divorced. She is corroborated in her testimony that this was her state of mind and understanding, by the fact that her undivorced state was brought to light as a result of making a job application, when the ensuing investigation disclosed she was not divorced from her first husband. Evidently Mrs. Lightsey honestly believed she had gained a divorce from Mr. Griffin, for if this had not been the case, it is quite unlikely she would have made any reference to him in her job application or that she had a divorce decree

dissolving their marriage. However, she evidently did so state, for as a result of the job investigation, which was with respect to an aircraft manufacturing company, the fact she had no divorce decree was discovered.

The next inescapable conclusion of fact is that Mr. Lightsey became aware in 1948, that Mrs. Lightsey had gotten a divorce from her first husband. She so testified, and that is the only reasonable conclusion to be drawn from Mr. Lightsey's testimony. Mr. Lightsey testified as follows:

"Q.   When did it come to your attention that she was legally married to someone else, not married to you?

A.   1947- or 48. I was called into the CO's office.

Q.   Where?

A.   In Germany.

Q.   Was that the first time?

A.   That's the first time,—*now, I knew about her being married before then, I didn't know it until by accident I came home, and that's when I met the child.*"

While this last answer is somewhat muddled, it appears Mr. Lightsey is saying that he knew about her prior marriage when he was called into the CO's office in 1948 in Germany with respect to some other development in regard to it. This is made more evident by his ensuing testimony which goes on thusly:

"Q.   And was that after 1942? (Inquiring as to the time when Mr. Lightsey met the daughter of the former marriage)

A.   Yes, sir.

Q. Now how long after you attempted to go through this marriage ceremony did you find out that she had a child?

A. A couple of years, I'm sure it was."

So, in 1944, Mr. Lightsey became aware Mrs. Lightsey had been previously married, and the only reasonable conclusion from his entire testimony is that he became aware in 1948, while he was still in Germany, that she had gotten a divorce decree from Mr. Griffin. This conclusion is further fortified by this testimony of Mr. Lightsey:

"Q. Now, your wife testified she asked you after she obtained her divorce from Griffin, to remarry her, is that true?

A. She said something to that effect, but I refused.

Q. You declined?

A. Yes, sir.

Q. That is true?

A. Yes, sir, that is true."

In regard to this, the record discloses the following:

"Q. I see. It is very recently, then, that he found that you got a divorce from Mr. Griffin,—right?

A. No, sir, he has known it before. But he just went through them to get the paper he used.

Q. And you think he saw your copy of the divorce since you have moved to Tennessee,—right?

A. He took it since we have been in Tennessee, I believe.

Q. All right. Now, after you obtained your divorce from Myron J. Griffin, I want to ask you if you didn't request that he go through a marriage ceremony with you, and if he didn't say, it ain't necessary, I won't do it, or something to that effect?

A. I don't remember exactly what he said, but I did suggest that we have a—because this was the first wedding where none of the family was present and I suggested that we—

Q. You did suggest, after you obtained this divorce, that enter into a marriage ceremony?

A. Yes, sir.

MR. RUTHERFORD: That's all.

REDIRECT EXAMINATION:

MR. FISHER:

Q. Mrs. Lightsey, Mr. Rutherford just asked you something about what was said on that occasion, something about what he said, that it wasn't necessary?

A. Yes, sir, that's what he said.

Q. Now, what—did he inform you or make any statement about why he thought it was unnecessary?

MR. RUTHERFORD: Your Honor please, I am going to object to the question, because the witness didn't answer it that way, that was my language. She never testified that way. She said she suggested it to him, and he would not do it.

MR. FISHER:

Q. Now,—

MR. RUTHERFORD: Wait just a minute!

THE COURT: I am going to sustain the objection,—

MR. FISHER: Your Honor—

THE COURT: Frankly, I question whether it's competent, what the parties thought was necessary or not necessary. I think it was what it was actually, to pass upon it, they were both guessing about it.

MR. FISHER:

Q. At the time were you living as man and wife?

A. Yes, sir, we were.

Q. Did he state any reason to you why he thought it was unnecessary?

MR. RUTHERFORD: Your Honor Please, I renew my objection.

THE COURT: Yes, sir, Mr. Fisher, that's just another way of asking the same thing.

MR. FISHER: Yes, sir, but Your Honor please, this was raised on cross examination and was not any part of the original—

THE COURT: Yes, but I have ruled that what the parties think about whether it was necessary. I sustain the objection.

MR. FISHER:

Q. Excuse me, Mrs. Lightsey, one more question. In the cross examination you stated that Mr. Lightsey knew that you had obtained your divorce at that time in September of 1948, is that correct?

A. Well, Mr. Fisher, you see, I can't recall dates. One of those papers is dated July, and one is dated in September.

Q. I merely asked you where he was at the time—

A. Well, he came home at the time—

MR. RUTHERFORD: Wait! Wait! What was the question? I can't hear you, with both of you talking at once.

MR. FISHER:

Q. Mrs. Lightsey, I said you stated on cross examination that when you obtained your divorce, regardless of when it was, that your husband, Mr. Lightsey was in Germany, is that correct?

A. Sir, I can't recall whether he had just gotten—

MR. RUTHERFORD: Your Honor, please, I am objecting, he can't ask her—

MR. FISHER: I am not asking her—

Q. I said, you stated that in your testimony to Mr. Rutherford, did you not?

MR. RUTHERFORD: *I agree that she did.* (our emphasis)

MR. FISHER:

Q. Mrs. Lightsey, did your husband come home from Germany prior to your leaving Georgia?

A. Yes, sir, we lived in Georgia at that time.

Q. All right, and how soon after you obtained your divorce, or approximately when did your husband return from Germany"

A. Well, in the same month; he returned in September.

Q. Then you continued from September 'til when to live in Georgia?

A. 'til February of 1950.

Q. The two of you together at all times during that time?

A. Yes, sir.''

B. of E. pp. 34-38

The burden of the proof is that within a month of Mrs. Lightsey's divorce decree in 1948, Mr. Lightsey returned to Georgia and lived with Mrs. Lightsey until 1950, being domiciled and maintaining his residence there until he was transferred to England in 1950.

The record is also clear that from 1948, at which time the preponderance of the evidence is that Mr. Lightsey learned of the divorce decree, until Mrs. Lightsey filed her divorce bill in 1964, sixteen years, he lived with appellant as husband and wife, and held her out to all the world in business and social relationships in this capacity.

These being the facts established by the preponderance of the evidence, we necessarily conclude. that Mrs. Lightsey and Mr. Lightsey, although their ceremonial marriage was void, did in fact consummate a valid, common law marriage in the State of Georgia and, therefore, this case must be judged in the light thereof.

We say this on authority of Smith v. Reed, 145 Ga. 724, 89 S.E. 815, L.R.A. 1917A, 492; Hawkins v. Hawkins, 166 Ga. 153, 142 S.E. 684; Hamilton v. Bell, 161 Ga. 739,

132 S.E. 83; Addison v. Addison, 186 Ga. 155, 197 S.E. 232; Heflinger v. Heflinger, 161 Ga. 867, 132 S.E. 85; Chance v. Chance, 60 Ga.App. 889, 5 S.E.2d 399.

We think it necessary to refer to only two of these cases, Chance v. Chance and Smith v. Reed.

Chance v. Chance, 5 S.E.2d 399, contains the following statement:

"The applicant contended that she was the common law wife of M. W. Chance at the time of his death and had been for many years prior thereto and that she was entitled to a year's support out of his estate. This was denied by the caveators. 'By the common law and the law of this state, a mutual agreement to be husband and wife, by parties able to contract, followed by cohabitation, is recognized as a valid marriage.' Dale v. State, 88 Ga. 552, 556, 15 S.E. 287, 288. 'At common law marriage between persons competent to enter into the relation may be contracted by an agreement between the man and woman to become husband and wife, and in pursuance of such an agreement entering into a state of cohabitation. 1 Andrews' Am.L. (2d Ed.) sec. 482; 1 Bish.Mar., Div. & Sep. sec. 320; Askew v. Dupree, 30 Ga. 173. Marriage may be inferred from proof of cohabitation, and that the parties held themselves out to the world as husband and wife, and such proof may be made by general repute among neighbors and others in a position to know the facts. In 1 Andrews' Am.L. (2d Ed.) sec. 486, it is said: "Where the only proof in the case is of continuous cohabitation, the presumption is that it was lawful. Where to this proof is added some affirmative proof of holding themselves out as man and wife, it adds so much to the force of the presumption, and length of time strengthens the

probative force of the presumption. This presumption of marriage from connubial habit is one of the strongest known to the law, and is to be repelled only by clear evidence. Evidence of repute—that is, the reputation of the parties among their acquaintances—as to whether they are man and wife is always admissible, and such proof strengthens the force of the presumption from connubial habit." ' Drawdy v. Hesters, 130 Ga. 161, 168, 60 S.E. 451, 454, 15 L.R.A.,N.S., 190." 5 S.E.2d 400-401

In Smith v. Reed, 89 S.E. 815, we find this statement:

"If a man and woman begin to cohabit, not as man and wife, but as a meritricious cohabitation, their continued cohabitation will be presumed to continue on the same basis, unless something is shown to the contrary. But where a man and woman enter into a ceremonial marriage, thus openly declaring their intention to be husband and wife, and live together, the marriage may be void because of some impediment, and the cohabitation may not be legal; but if the impediment is removed, and the matrimonial cohabitation continues, it is to be presumed that the intent to be husband and wife, expressed in the ceremonial marriage, continues, unless the contrary appears, and the continued cohabitation after the removal of the impediment is to be considered as under such an intent and declaration rather than with an unlawful intent. At least a renewed consent might be inferred. * * *

\* \* \* \* \* \*

"In this state it has been held that where two persons entered into a ceremonial marriage and cohabited as husband and wife, although the marriage was invalid because one of them was under the age at which a

valid marriage could be contracted, yet if they continued to cohabit as man and wife after he arrived at the age when they could lawfully marry, their relation was that of husband and wife. Smith v. Smith, 84 Ga. 440, 446, 11 S.E. 496, 8 L.R.A. 362. True the impediment there was of a different character, but the ceremonial marriage was invalid. There is nothing in Drawdy v. Hesters, 130 Ga. 161, 60 S.E. 451, 15 L.R.A., (N.S.), 190, conflicting with the ruling here made; but the two decisions harmonize, and the former cites approvingly Andrew's American Law, referred to above.

In the present case, even if Williams knew that his first wife was living at the time of the second marriage, but the second woman whom he married ceremonially did not know of it, and after the death of the first wife they continued their matrimonial cohabitation, why should an unlawful, rather than a lawful, intent be attributed to the parties after the removal of the impediment? The declaration of intent to be husband and wife should be treated as continuing, nothing to the contrary appearing; and the continued cohabitation under such circumstances should be considered as lawful rather than unlawful." 89 S.E. 816-817

This being the law of the State of Georgia, and there being no doubt whatsoever, not even any contention on the part of appellee to the contrary, that appellee held out appellant as his wife in business and social activities and contacts from the time of his return to Georgia in 1948 to the time they left there in 1950, and has so continued to hold her out in all of the other places where they have resided for sixteen years, we have no hesitancy in holding the parties were validly married by the com-

mon law of Georgia at the time of the institution of the divorce proceedings here in Tennessee.

This brings us to the second inquiry, and that is whether the State of Tennessee, which does not recognize common law marriages as being contractable between its residents will recognize such a valid subsisting common law marriage as a defense in a case of this character.

■■ It is settled law in Tennessee that though a common law marriage cannot be contracted within this State, our courts do recognize a common law marriage contracted in a state where such a marriage is valid. Troxel v. Jones, 45 Tenn.App. 264, 322 S.W.2d 251; Keith v. Pack, 182 Tenn. 420, 187 S.W.2d 618, 159 A.L.R. 101; Smith v. Mitchell, 185 Tenn. 57, 202 S.W.2d 979.

■■ So, since the marital status on which the Davidson County Probate Court was acting was a valid Georgia marriage, the law of that state controls in determining the relationship of the parties, and it was the duty of the Probate Court, as it is ours, to give effect thereto. And, while it is true T.C.A. 36-801 provides ''The following shall be causes of divorce from the bonds of matrimony: (2) That either party has knowingly entered into a second marriage, in violation of a previous marriage, still subsisting,'', it is also true that this statute provision has no effect in this case because the marital status being considered by the Probate Court, either for dissolution or not, was not the ceremonial marriage, which was admittedly void, but the common law marriage as to which there was no previous marriage existing which could operate as an impediment to its consummation. In other words, at the time the common law marriage was consummated the disability of the prior marriage on the

part of the appellant, Ruby Lee Keen Lightsey, had been removed by the absolute divorce decree awarded her in 1948, so the Probate Court had before it a valid marriage on which to act.

We think the ends of justice will be met, and procedural and jurisdictional limits will be recognized, if we simply sustain the assignments of error as and to the extent indicated, and set aside the decree of the Probate Court and dismiss the appellee's suit for absolute divorce, without the entry of a decree affirmatively declaring the validity of appellant's marriage to the appellee. Since this is the result, anyway, of what we have done, and since there may be some doubt whether the Probate Court of Davidson County would have such purely equitable, declaratory, jurisdiction, we are content to make this disposition in the case.

It is so ordered.

Shriver and Puryear, JJ., concur.