IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 10, 2017 Session

**IN RE THE ESTATE OF JIMMY L. SMITH**

**Appeal from the Probate Court for Monroe County**
**No. 2014-149          Dwaine Thomas, Judge**

_____

**No. E2016-02254-COA-R3-CV**

_____

In this appeal, the trial court determined that the woman who claimed to be the decedent's common law wife had failed to establish her status as his wife and heir. The alleged widow asserts that she presented satisfactory evidence to prove that she was the common law spouse. As modified, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court**
**Affirmed as Modified; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR, and THOMAS R. FRIERSON, II, JJ., joined.

Debbie Burns, Madisonville, Tennessee, pro se.

Steven B. Ward and Doris Matthews, Madisonville, Tennessee, for the appellee, Cora Davis, Personal Representative for the Estate of Jimmy L. Smith.

**OPINION**

**I. BACKGROUND**

Jimmy L. Smith (**"Decedent"**) died a resident of Monroe County, Tennessee on November 20, 2014. Decedent left no will. Debbie Burns, who claimed to be Decedent's common law wife, was appointed personal representative and opened an estate for Decedent on January 8, 2015. One of Decedent's sons, Jimmy L. Smith, Jr.,[1] objected to the appointment of Ms. Burns and authorized Cora Davis, Decedent's sister,

_____

[1]Decedent was survived by two sons, Jimmy L. Smith, Jr., and Richard L. Smith.

to appear on his behalf. Ms. Davis filed a motion to set aside the appointment of Ms. Burns as personal representative on February 3, 2015, asserting "that, to the best of her knowledge, the deceased and Debbie Burns were never married and that [Ms. Burns], therefore would not have first priority to serve as administrator." Decedent's son, Jimmy L. Smith, Jr., also submitted a response in which he stated that "[t]o the best of his knowledge, his father . . . was never married to Debbie Burns . . . ."

On September 14, 2015, almost ten full months after Decedent's death and eight months after her appointment as personal representative in Tennessee, Ms. Burns filed a Petition for Declaratory Judgment of Common Law Marriage in Charleston County, South Carolina, the former domicile of couple. Unlike Tennessee, South Carolina is a jurisdiction that recognizes the validity of a marriage despite a couple's noncompliance with statutory ceremony and license requirements. The state of South Carolina allows claimants the opportunity to convince the trier of fact that a common law marriage exists. South Carolina has codified the common law marriage doctrine in section 20-1-360 of the South Carolina Code, which states that the failure to obtain a marriage license would not render a marriage illegal. S.C. Code Ann. § 20-1-360.

In her Petition for Declaratory Judgment of Common Law Marriage before the South Carolina Probate Court, Ms. Burns argued, *inter alia,* the following:

> (a) she and Decedent were aware of the common law marriage requirements in South Carolina; (b) she and Decedent entered into an implied contract to be married in 1986, thus establishing their common law marriage by this implied contract, cohabitation as husband and wife, and holding themselves out as being married to their family, friends, and the community; (c) in 1988, she and Decedent applied for a South Carolina marriage license, but the marriage was not solemnized because a minister could not be found to marry them due to this being their second and third marriages, respectively; (d) she and Decedent received mail as husband and wife and paid utilities as husband and wife; (e) she and Decedent filed joint tax returns as husband and wife in 1987, and in subsequent years chose to file married filing separately; (f) she is recognized as Decedent's spouse by the Social Security Administration and is receiving survivor benefits since Decedent's death as of February 2015; (g) she and Decedent did live and cohabitate as man and wife, held themselves out to the world as man and wife, and acquired a reputation within the community in which they resided as husband and wife; (h) she and Decedent opened joint bank accounts as husband and wife in Charleston

- 2 -

County, South Carolina; (i) in 1993, Decedent was involved in a legal action in Monroe County and averred in the complaint "[t]hat [at] all times [material] hereto the Plaintiffs Jimmy Leon Smith and Debbie Faye Smith were and are husband and wife"; (j) In 1996, Decedent deeded a parcel of land to Ms. Burns as his wife, and in the case of *State of Tennessee ex rel. Linda Smith*, an action for child support, the trial court found that Decedent conveyed a parcel of land to "his current wife," Debbie F. Smith in order to avoid attachment from child support; and (k) she demonstrated the devotion to the usual duties and responsibilities of a wife, buying groceries, driving Decedent to and from work, arranging their meals, caring for Decedent in sickness and in health, displaying photographs of themselves and family in their home, and entertaining others in their home.

Ms. Burns requested a declaratory judgment "that the common law marriage of Petitioner and Decedent was, and is, valid and existing, and that Petitioner and Decedent were husband and wife."

After reviewing the evidence presented by Ms. Burns, the South Carolina Probate Court held on February 2, 2016, that "Petitioner has shown that she and the Decedent consistently held themselves out to the community as husband and wife and that ***they intended to create a spousal relationship while they resided together in Charleston County, South Carolina***" from 1986 to 1991. (Emphasis added.). The court specifically held that Ms. Burns "submitted sufficient evidence to support the arguments she made in her Petition" and *decreed that pursuant to South Carolina law, Ms. Burns "was the common law spouse of the Decedent . . . and . . . entitled to all spousal rights as an heir . . . ."* (Emphasis added.). The South Carolina court noted that Decedent's sons had failed to appear at the hearing. Ms. Davis did not make an appearance and accused Ms. Burns of "forum shopping."

Despite recognizing that South Carolina law must be applied to determine if Ms. Burns was Decedent's common law spouse, the Monroe County Probate Court did not feel compelled to accept the ruling of the South Carolina court on the issue. Instead, in an order entered October 25, 2016, the court made the following findings of fact and law:[2]

---

[2]The record reveals that the hearing in Monroe County occurred on January 11, 2016, prior to the ruling by the South Carolina court, but the final order was not filed until the fall of 2016, eight months after the declaratory judgment was entered by the South Carolina Probate Court.

Title 20 of the South Carolina Code requires four elements to be shown to prove common law marriage to have occurred: 1. Legally free to marry under present law; 2. Co-habitation for a period of time; 3. Intent to be married; and 4. Reputation as a married couple. In this case no proof has been presented that would lead this Court to believe that the Parties were not free to marry. It is also undisputed that the parties did co-habitate for a number of years[;] however, at the time of Mr. Smith's death, and for a number of years preceding his death, they were not co-habitating.

***The issue of intent to be married is somewhat more troubling.*** Petitioner Burns testified it was her intent to be married. Petitioner Davis argues that the "Dead Man['s] Statute" would prohibit Ms. Burns from providing testimony about the expressed intentions of Mr. Smith to her. The Court finds that the "Dead Man['s] Statute" does in fact prohibit the testimony of any expressed intentions of Mr. Smith to Ms. Burns as it would be testimony of a party opponent in regard to a transaction directly effecting the pecuniary interests of the testifying party opponent.[3] *See Pritchard on Wills and Administration of Estates*, Seventh Edition § 728. ***No witness presented at trial other than Ms. Burns offered testimony of Mr. Smith's intention to be married.***

Reputation as a married couple was the vast majority of the proof presented by Ms. Burns at trial as well as in her supplemental filings offered to the Court. Numerous exhibits attesting to the reputation as a married couple were presented by Ms. Burns and objected to by Ms. Davis. It does appear to the Court that Mr. Smith and Ms. Burns held themselves out to be a married couple to family and close friends[;] however, ***most of the proof presented dealt with periods of time in which the Decedent and Ms. Burns resided in Tennessee, and would have no bearing on the formation of a common law marriage in the State of South Carolina. Further, proof presented by Ms. Burns only shows a use of marriage when beneficial to her and not consistently at all times.***

(Emphasis added.).

---

[3]Ms. Burns claimed in the Tennessee action that "Decedent, during his life, understood and was aware that he and [Ms. Burns] were engaged in a common law marriage."

Because Ms. Burns did not file an action in South Carolina to recognize the common law marriage prior to Decedent's death and the filing of her Petition to Appoint Administrator in Tennessee on December 19, 2014, the Monroe County Probate Court viewed part (b)(4) of South Carolina Code section 62-2-802 as relevant:

> SECTION 62-2-802. Effect of divorce, annulment, decree of separate maintenance, or order terminating marital property rights.
>
> . . .
>
> (b) For purposes of Parts 1, 2, 3, and 4 of Article 2 [Sections 62-2-101 et seq., 62-2-201 et seq., 62-2-301 et seq., and 62-2-401 et seq.] and of Section 62-3-203, a surviving spouse does not include:
>
> . . .
>
> (4) an individual claiming to be a common law spouse who has not been established to be a common law spouse by an adjudication commenced before the death of the decedent or within the later of eight months after the death of the decedent or six months after the initial appointment of a personal representative; *if the action is commenced after the death of the decedent, proof must be by clear and convincing evidence.*
>
> Thus pursuant to South Carolina [l]aw, there would be no presumption of validity of the marriage without finding by clear and convincing evidence of the validity of the marriage, and *no finding or filing for declaratory judgment would have a binding effect on the outcome of this hearing absent a determination of clear and convincing evidence.*
>
> It is the finding of this Court that . . . Ms. Debbie Burns has failed to carry the burden required of her in the application of South Carolina [l]aw, and as such no common law marriage existed to be recognized by the Monroe County Tennessee Probate Court. Further, Ms. Burns has failed to prove standing to contest distribution of property to the Heirs at Law.

(Emphasis added.). Based upon the statute and the court's review of the evidence, it did not find clear and convincing evidence that Ms. Burns was Decedent's common law spouse. Clear and convincing evidence under South Carolina law is that "degree of proof which will produce in the [fact-finder] a firm belief as to the allegations sought to be established. Such measure of proof is intermediate, more than a mere preponderance but less than is required for proof beyond a reasonable doubt; it does not mean clear and unequivocal." *Satcher v. Satcher*, 570 S.E.2d 535, 538 (S.C. Ct. App. 2002) (internal citations and quotation marks omitted). S.C. Code § 62-2-802(b)(4). The court recalled the previously ordered Letters of Administration issued to Ms. Burns and removed her as personal representative of Decedent's estate. Ms. Davis was appointed to serve as administrator. Ms. Burns filed a timely appeal.

## II. ISSUE

We restate the issue before us as follows:

> Did Ms. Burns establish sufficient evidence to support her claim of a common law marriage to Decedent in South Carolina to make her the surviving spouse for purposes of Decedent's estate.

## III. STANDARD OF REVIEW

We review the trial court's findings of facts de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010). Conclusions of law are reviewed de novo with no presumption of correctness. *Id.* When the resolution of issues in a case depends upon the truthfulness of witnesses, the trial court who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. Workers Comp. Panel 1995). The weight to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accord will be given great weight by the appellate court. *See Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

## IV. DISCUSSION

In Tennessee, the inception, duration, status, conditions, and termination of a marriage are subject to state legislative power and control. *Martin v. Coleman*, 19 S.W.3d 757, 760 (Tenn. 2000). While common law marriage cannot be entered into in this State, Tennessee courts will recognize a marriage contracted in a state that permits

such marriages.[4] *Lightsey v. Lightsey*, 407 S.W.2d 684, 690 (Tenn. Ct. App. 1966). The law of the state alleged to have been the contracting state controls to determine whether a marriage exists. *Id.*

In this cause, Ms. Burns alleged that she and Decedent were married under the laws of the State of South Carolina. Common law marriages are recognized as valid marriages in South Carolina. The party seeking to establish the existence of a common law marriage carries the burden of proof. *Ex parte Blizzard*, 193 S.E. 633, 634 (S.C. 1937).

South Carolina courts have unanimously held that a common law marriage is formed when the "two parties have a present intent to enter into a marriage contract." *Tarnowski v. Lieberman*, 560 S.E.2d 438, 440 (S.C. Ct. App. 2002) (citing *Barker v. Baker*, 499 S.E.2d 503, 508 (S.C. Ct. App. 1998)). "It is essential to a common law marriage that there shall be a mutual agreement between the parties to assume toward each other the relation of husband and wife. Cohabitation without such an agreement does not constitute marriage." *Johnson v. Johnson*, 112 S.E.2d 647, 651 (S.C. 1960). "The fact finder is to look for mutual assent: the intent of each party to be married to the other and a mutual understanding of each party's intent." *Callen v. Callen*, 620 S.E.2d 59, 62 (S.C. 2005). Circumstantial evidence typically relied upon to establish common law marriage includes evidence establishing that parties have lived together as husband and wife for an extended period of time and have publicly held themselves out to the community as a married couple. *Barker*, 499 S.E.2d at 508. South Carolina case law does not require couples to hold themselves out as a married couple as a separate requirement, but instead permits claimants to use community recognition and reputation to show the intent to be married. If a party claiming a common law marriage "presents proof of apparently matrimonial cohabitation and long-term social acceptance of the couple as married, a presumption arises that the couple entered into a common law marriage," notwithstanding the absence of any proof of an express agreement to enter into a common law marriage. *Id.* at 507. There is a strong presumption in favor of marriage by cohabitation, apparently matrimonial, coupled with social acceptance over a long period of time. *Jeanes v. Jeanes*, 177 S.E.2d 537, 539 (S.C. 1970). While the presumption of marriage from cohabitation and reputation is a rebuttable presumption, the degree of proof to overcome it is high and can only be dispelled by evidence which is

---

[4]Tennessee has employed the equitable doctrine of estoppel to protect the expectation interests of unmarried cohabitants and third parties when the cohabitants have held themselves out as married. *See Guzman v. Alvares*, 205 S.W.3d 375, 380 (Tenn. 2006) (noting "the marriage is presumed to be valid even though it is not technically lawful."). Tennessee has allowed this estoppel argument in claims of widows against an estate. *See Smith v. N. Memphis Sav. Bank*, 89 S.W. 392, 397-08 (Tenn. 1905) (providing that since the decedent, "if alive, would be estopped to deny the complainant was his wife in a proceeding to enforce a right growing out of such relation, his personal representative is estopped to controvert the rights of the complainant as a widow and distribute of the decedent.").

"clear, distinct and satisfactory." *Id.*; *Owens v. Owens*, 466 S.E.2d 373, 375 (S.C. Ct. App. 1996).

In *Kirby v. Kirby*, 241 S.E.2d 415 (S.C. 1978), the South Carolina Supreme Court observed:

> The difference between marriage and concubinage . . . rests in the intent of the cohabitating parties; the physical and temporal accompaniments of the cohabitation may be the same in both cases, but the intent in the two cases is widely apart always. The intent in marriage is usually evidenced by a public and unequivocal declaration of the parties, but that is not necessary; the intent may exist though never public and formally declared; nevertheless the intent must exist . . . . It is true that when the intent has not been formally and publicly declared, . . . it may yet rest in circumstances.

*Id.* at 416 (quoting *Tedder v. Tedder*, 94 S.E. 19, 20 (S.C. 1917)). In *Callen*, that court noted that "[a] party need not understand every nuance of marriage or divorce law, but he must at least know that his actions will render him married as that word is commonly understood. If a party does not comprehend that his 'intentions and actions' will bind him in a 'legally binding relationship,' then he lacks intent to be married. A lack of intent to be married overrides the presumption of marriage that arises from cohabitation and reputation." *Callen*, 620 S.E.2d at 63.

The Monroe County Probate Court determined that the evidence before it was insufficient to establish that Ms. Burns and Decedent showed an intent to marry while in South Carolina. According to the court, although she had the burden of proof to establish the common law marriage, Ms. Burns presented no witnesses from South Carolina and little evidence regarding the couple's reputation in the community in South Carolina and the existence of any marriage between Ms. Burns and Decedent. In view of the Monroe County court's ruling, we first must address the question of whether the South Carolina declaratory judgment of record is entitled to full faith and credit in Tennessee.

Our task in reviewing this case is made difficult due to the lack of a transcript or statement of the evidence or proceedings. In the absence of such, a conclusive presumption arises that there was sufficient evidence to support the trial court's judgment. *Outdoor Management, LLC v. Thomas*, 249 S.W.3d 368, 377-78 (Tenn. Ct. App. 2007). When an issue of sufficiency of the evidence is raised on appeal, without an accompanying transcript or statement of the evidence, the appellate court will presume that the transcript or statement of the evidence, had it been included in the record, would have supported the trial court's factual conclusions. *Fayne v. Vincent*, 301 S.W.3d 162, 169-70 (Tenn. 2009).

In *Blackwell v. Haslam*, No. M2012-01991-COA-R3-CV, 2013 WL 3379364, at *5-6 (Tenn. Ct. App. June 28, 2013), this court comprehensively addressed the relevant clause now before us:

> The Full Faith and Credit Clause of the United States Constitution states: "Full Faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. Const. art. IV, § 1. Expounding on the Full Faith and Credit Clause, Chief Justice John Marshall stated:
>
> > [T]he judgment of a state court should have the same credit, validity, and effect in every other court in the United States which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States.
>
> *Hampton v. M'Connel*, 3 Wheat. 234, 16 U.S. 234, 46. Ed. 378 (1818). In the wake of *Hampton* and its progeny, "it is now well established that the full faith and credit clause of the federal constitution requires that the judgment of a state court, which had jurisdiction of the parties and the subject matter in suit, be given the same credit, validity and effect in the courts of every other state and that such judgment be equally conclusive upon the merits in the courts of the enforcing states." *Mirage Casino Hotel v. J. Roger Pearsall*, No. 02A01-9608-CV-00198, 1997 WL 275589, at *3 (Tenn. Ct. App. May 27, 1997). . . . Notwithstanding the importance of the principle behind the constitutional provision, "the United States Supreme Court has recognized at least three exceptions to the full faith and credit clause." *Mirage Casino Hotel*, 1997 WL 275589, at *4. Specifically, a forum state may decline to accord full faith and credit to the judgment or public act of another state if it is (1) void due to a lack of personal or subject matter jurisdiction, (2) based upon fraud, or (3) "where enforcement of the judgment would violate the public policy of the forum state." *Id.* (citations omitted). Tennessee courts have recognized and adopted all three of these exceptions. *See Four Seasons Gardening & Landscaping, Inc. v. Crouch*, 688 S.W.2d 439, 445 (Tenn.

Ct. App. 1984); *In re Riggs*, 612 S.W.2d 461, 465 (Tenn. Ct. App. 1980).

*Id.* at *5-6.[5]

This court further noted in *Coastcom, Inc. v. Cruzen*, 981 S.W.2d 179 (Tenn. Ct. App. 1998):

> Parties seeking to undermine the validity of a foreign judgment must meet a "stern and heavy" burden to demonstrate that the foreign judgment should not be enforced in Tennessee. *Dement v. Kitts*, 777 S.W.2d 33, 36 (Tenn. Ct. App. 1989). ***The factual issues underlying the foreign judgment may not be the basis of an inquiry to deny the foreign judgment full faith and credit.*** *Benham v. Fisher*, 650 S.W.2d 759 (Tenn. Ct. App. 1983). . . . The full faith and credit clause requires that the common law doctrine of *res judicata* be applied in one state to a judgment rendered in another state to the same extent that it applied in the state of its rendition. *Atchley v. Atchley*, 585 S.W.2d 614, 616 (Tenn. Ct. App. 1978). *Res judicata* is an absolute bar to a subsequent suit between the same parties on the same cause of action, and it concludes such parties not only as to all matters that were actually put at issue and determined, but also all matters which might have been put at issue and determined. *McKinney v. Widner*, 746 S.W.2d 699, 705 (Tenn. Ct. App. 1987).

*Coastcom, Inc.*, 981 S.W.2d at 181.

The declaratory judgment from South Carolina that Ms. Burns obtained held that she was Decedent's common law wife and surviving spouse. The declaratory judgment had preclusive effect on the Monroe County litigation for the issue raised in South Carolina--whether Ms. Burns was the common law wife of Decedent. Accordingly, we find that the South Carolina declaratory judgment that Ms. Burns was Decedent's wife was entitled to full faith and credit. However, this judgment must be construed in light of

---

[5]In *Baker v. General Motors Corp.*, 522 U.S. 222 (1998), Justice Ginsburg, writing for the Court created two novel exceptions to full faith and credit. First, a court outside the issuing state may decline to enforce a judgment which purports "to accomplish an official act within the exclusive province of that other state[.]" *Id.* at 235. Second, a state need not enforce a judgment of another state when the judgment "interfere[s] with litigation over which the ordering state had no authority." *Id.*

section 62-2-802 of the South Carolina Code. That statute provides in pertinent part as follows:

> (b) . . . a surviving spouse does not include:
>
> . . .
>
> (4) *an individual claiming to be a common law spouse who has not been established to be a common law spouse by an adjudication commenced before the death of the decedent or within the later of eight months after the death of the decedent or six months after the initial appointment of a personal representative*; if the action is commenced after the death of the decedent, proof must be by clear and convincing evidence.

(Emphasis added.). Ms. Burns clearly did not meet any of the time requirements of the relevant statute. She did not file her Petition for Declaratory Judgment of Common Law Marriage in South Carolina until almost ten months after Decedent's death on November 20, 2014, and eight months after her appointment as personal representative on January 8, 2015. Accordingly, despite the declaratory judgment finding of the South Carolina court that Ms. Burns was "entitled to all spousal rights as an heir" of Decedent, we must hold that South Carolina law mandates a decision that Ms. Burns is not the surviving spouse of Decedent.

## V. CONCLUSION

The judgment of the trial court is affirmed as modified and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed to the appellant, Debbie Burns.

_____
JOHN W. MCCLARTY, JUDGE